Filed 9/11/13

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054823 |
| v. | (Super.Ct.No. RIC10009408) |
| RICHARD CLINTON HILL, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. James T. Warren[†] and Jean P. Leonard, Judges. Reversed with directions.

Chris Truax, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III.

[†] Judge Warren is a retired judge of the Riverside Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Ronald A. Jakob, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Richard Clinton Hill appeals an order civilly committing him to a state hospital under the Sexually Violent Predator Act. (Welf. & Inst. Code, § 6600 et seq. (the SVPA).)[1] He contends that he had a constitutional right to the effective assistance of counsel and that the trial court violated that right by refusing to consider his *Marsden*[2] motion to replace his court-appointed attorney. He also contends that his right to a fair trial was violated by the trial judge's "multi-tasking" during the trial and that the indefinite commitments provided for in SVPA proceedings violate equal protection principles.

We reject the latter two contentions. However, we agree that defendant was entitled to a *Marsden* hearing and that the trial court's failure to conduct a *Marsden* hearing was prejudicial error.

## BACKGROUND

Defendant does not challenge the jury's finding that he meets the statutory definition of a sexually violent predator. Accordingly, we need not discuss the underlying offenses or the expert testimony supporting the jury's findings. For our purposes, it suffices to say that the district attorney filed a petition for commitment under

---

[1] All statutory citations refer to the Welfare and Institutions Code unless another code is specified.

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

2

the SVPA and that a jury found the allegations of the petition true. On October 24, 2011, the court ordered defendant committed to Coalinga State Hospital. On that same date, defendant filed his notice of appeal.

**DISCUSSION**

I.

THE TRIAL COURT'S REFUSAL TO HEAR DEFENDANT'S *MARSDEN* MOTION

REQUIRES REVERSAL

1. *Introduction and Summary of the Issue.*

Defendant was represented by a court-appointed attorney in the SVPA proceedings. Before trial commenced, defendant filed a written motion seeking a *Marsden* hearing to ask for the appointment of substitute counsel. In his written motion, he stated that he was dissatisfied with his current attorney for various reasons, including counsel's failure to communicate and confer with him, except briefly; counsel's failure to subpoena witnesses defendant considered necessary to his defense; counsel's failure to investigate and obtain evidence crucial to the defense; counsel's failure to secure expert witnesses; and counsel's failure to file a number of motions. Defendant stated in the written motion that he would present evidence to support his contentions at the hearing.

At a pretrial hearing, the trial court informed defendant that he was not entitled to a *Marsden* hearing and dismissed the motion.

Defendant now contends that he has a constitutional right to the effective assistance of counsel and, as part of that right, to a *Marsden* hearing. The Attorney General agrees that defendant has a due process right to counsel and to a *Marsden*

3

hearing. The parties disagree, however, as to the standard for reversal following a trial court's refusal to hold a *Marsden* hearing where the defendant has a right to such a hearing.

2. *A Defendant in a Civil Commitment Proceeding Has a Due Process Right to the Effective Assistance of Counsel and to a Marsden Hearing.*

We first address defendant's right to a *Marsden* hearing.

Defendant acknowledges that the Sixth Amendment right to counsel, which is the source of the *Marsden* procedure, does not apply to civil commitment proceedings. Nevertheless, he contends that he has a due process right to the effective assistance of counsel, both arising directly from the due process clause of the Fourteenth Amendment and from the due process right which arises as a result of the Legislature's creation of a statutory right to counsel in SVPA proceedings. (§ 6603, subd. (a).)

This issue, arising under the Lanterman-Petris-Short (LPS) Act (§ 5000 et seq.), was addressed in *Conservatorship of David L.* (2008) 164 Cal.App.4th 701 (*David L.*). In that case, the proposed involuntary conservatee contended that he had a constitutional right to the effective assistance of counsel and to a *Marsden* hearing. The trial court had denied the motion without allowing the proposed conservatee to state the reasons for his request. (*Id*. at pp. 707-708, 712.)

The appellate court held that because the *Marsden* procedure is grounded in the Sixth Amendment right to effective counsel in criminal proceedings, it does not directly apply to an LPS proceeding, which is civil in nature. (*David L.*, *supra*, 164 Cal.App.4th at pp. 709-710.) However, because the LPS Act provides a statutory right to counsel, a

4

prospective involuntary conservatee has a liberty interest in that right which is protected by the due process clause of the federal Constitution. The court held that once a substantial state-created right has been conferred, "'minimum procedures appropriate under the circumstances [are] required . . . "to insure that the state-created right is not arbitrarily abrogated." [Citation.]'" (*Wilson v. Superior Court* (1978) 21 Cal.3d 816, 823, cited in *David L.*, at p. 710.) Accordingly, the court held, "under the LPS Act[,] a prospective conservatee's statutory right to effective assistance of counsel is protected by due process."[3] (*David L.*, at p. 710.)

The court next addressed the question of what procedures are required to protect the prospective conservatee's interest in his right to effective assistance of counsel. The court applied the four factors identified in *People v. Otto* (2001) 26 Cal.4th 200 (*Otto*), as relevant to that determination: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a

---

[3] The court noted that the duty of appointed counsel to perform in an effective and professional manner is implicit in the statutory right to counsel. (*David L.*, *supra*, 164 Cal.App.4th at p. 710.)

5

responsible government official. [Citation.]" (*Otto*, at p. 210, quoted in *David L.*, *supra*, 164 Cal.App.4th at pp. 710-711.)

The court held, first, that the liberty interests at stake in a conservatorship are significant because in addition to the possibility of involuntary physical restraint, a disabled person for whom a conservatorship is established faces the loss of many other liberties. (*David L.*, *supra*, 164 Cal.App.4th at p. 711.)

Second, the court held, there is "no meaningful distinction between criminal and LPS proceedings insofar as the procedures required to guard against the erroneous deprivation of the right to effective assistance of counsel. In holding that a trial court must provide a criminal defendant seeking substitute counsel an opportunity to state the reasons for his request, the court [in *Marsden*] explained that '[a] trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request. The defendant may have knowledge of conduct and events relevant to the diligence and competence of his attorney which are not apparent to the trial judge from observations within the four corners of the courtroom. . . . A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention "is lacking in all the attributes of a judicial determination."' [Citations.] Because the reasoning expressed in *Marsden* is equally applicable to LPS conservatorship proceedings, we conclude that the trial court must afford a prospective conservatee a full opportunity to state the reasons for requesting substitute counsel in accordance with *Marsden*." (*David L.*, *supra*, 164 Cal.App.4th at p. 711.)

6

Third, the court held, providing a proposed conservatee the opportunity to seek replacement of counsel furthers the purpose of the LPS Act "insofar as it safeguards against the erroneous deprivation of the right to effective assistance of counsel, which is essential to ensure the proposed conservatee is not erroneously deprived of his liberty. . . . Moreover, allowing a prospective conservatee a full opportunity to state his reasons for requesting substitute counsel is unlikely to place a significant fiscal or administrative burden on the government or potentially impede the government's interest in protecting the public safety or the prospective conservatee." (*David L.*, *supra*, 164 Cal.App.4th at pp. 711-712.) Fourth, the court held, "insofar as failing to provide a proposed conservatee with a full opportunity to state his reasons for requesting substitute counsel adversely impacts his right to effective assistance of counsel, it necessarily 'disable[s] him from presenting his side of the story before a responsible government official.'" (*Id.* at p. 712, quoting *Otto*, *supra*, 26 Cal.4th at p. 215.)

For all of these reasons, the court concluded that a prospective conservatee "has a right under the due process clause to fully state the reasons for requesting substitute counsel in an LPS conservatorship proceeding." (*David L.*, *supra*, 164 Cal.App.4th at p. 712.)

For the same reasons, we conclude that a defendant in an SVPA proceeding has a due process right to a *Marsden* hearing. A defendant in SVPA proceedings is generally entitled to due process protections. (*Otto*, *supra*, 26 Cal.4th at p. 209; see also *Addington v. Texas* (1979) 441 U.S. 418, 419-420, 425-431 [due process clause of the Fourteenth Amendment requires at least clear and convincing evidence in a state civil commitment

7

proceeding].)  And, like the LPS Act, the SVPA provides a statutory right to counsel. (§ 6603, subd. (a).)  The considerations discussed in *David L.*, *supra*, 164 Cal.App.4th 701, apply equally to SVPA proceedings.  Indeed, in light of the fact that a commitment under the SVPA is most likely to result in loss of physical liberty for a prolonged period, potentially for the remainder of the defendant's life, these considerations apply with even greater force in SVPA proceedings than in LPS proceedings.  Accordingly, we agree with the parties that the trial court's refusal to entertain defendant's *Marsden* motion arbitrarily deprived defendant of his statutory right to effective representation and of his due process right to a *Marsden* hearing to protect and effectuate that right.

3.  *Reversal for a Posttrial Marsden Hearing Is Required*.

The court in *David L.* did not decide what standard of reversal applied to the denial of the right to a *Marsden* hearing because the conservatorship had been terminated before the appeal was decided.  (*David L.*, *supra*, 164 Cal.App.4th at pp. 712-713.)  Here, defendant contends that reversal is automatic because (1) a due process right is involved and (2) the absence of a record of a defendant's reasons for wanting a new attorney prevents meaningful review.  At the very least, he contends, we should apply harmless error review pursuant to *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).  The Attorney General contends that because defendant did not have a Sixth Amendment right to counsel but merely a state-created statutory right, the erroneous denial of the *Marsden* hearing is subject to prejudice review under *People v. Watson* (1956) 46 Cal.2d 818, which governs the majority of state-law errors.

8

The denial of a statutory right in a civil commitment proceeding is reviewed under *Watson*. (*People v. Cosgrove* (2002) 100 Cal.App.4th 1266, 1276 [Fourth Dist., Div. Two].) Federal constitutional violations in such proceedings are reviewed under *Chapman*. (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1194; *People v. Fisher* (2009) 172 Cal.App.4th 1006, 1014.) Here, although the right to effective assistance of counsel in SVPA proceedings is statutory, that right is protected by the due process clause of the federal Constitution. (See *David L.*, *supra*, 164 Cal.App.4th at p. 710.) Accordingly, reversal is required unless we can find the denial of defendant's right to bring a *Marsden* motion harmless beyond a reasonable doubt.

The error was not harmless beyond a reasonable doubt. In *Marsden*, the defendant made an oral motion to replace his attorney but was not given the opportunity to state his reasons. (*Marsden*, *supra*, 2 Cal.3d at pp. 120-122.) The court held that the error was prejudicial: "On this record we cannot ascertain that defendant had a meritorious claim, but that is not the test. Because the defendant might have catalogued acts and events beyond the observations of the trial judge to establish the incompetence of his counsel, the trial judge's denial of the motion without giving defendant an opportunity to do so denied him a fair trial. We cannot conclude beyond a reasonable doubt that this denial of the effective assistance of counsel did not contribute to the defendant's conviction. [Citing *Chapman*.]" (*Id.* at p. 126.) Here, defendant's written *Marsden* motion listed a number of complaints about his attorney's representation which, if true, could support a finding that the attorney failed to meet his professional responsibilities. Defendant stated in his motion that he would provide factual support for his claims at the hearing on the

9

motion. Because defendant might have been able to demonstrate that his attorney was not affording him adequate representation, the court's failure to hold a hearing resulted in a record which precludes effective review, as was the case in *Marsden*. Accordingly, we cannot say that the error was harmless beyond a reasonable doubt.

Moreover, we would come to the same conclusion even if *Watson* were the applicable standard of review. *Watson* requires reversal if the appellant demonstrates a reasonable probability that the outcome of the proceeding would have been more favorable in the absence of the trial court's error. (*Watson*, *supra*, 46 Cal.2d at p. 836.) A reasonable probability does not mean "more likely than not." Rather, it means "merely a reasonable chance, more than an abstract possibility." (*People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 918.) Because defendant's written motion lists failings of trial counsel which, if true, would warrant a finding that counsel failed to meet his professional responsibilities, defendant has met his burden of demonstrating that there is a reasonable probability that if the trial court had allowed him to bring the motion, the court would have granted defendant's request for new counsel.

When the trial court's failure to afford the defendant an opportunity to state the reasons for his dissatisfaction with his attorney results in a record which is insufficient for meaningful review but the trial was otherwise free of error, it is appropriate to reverse the judgment and remand the cause for the limited purpose of conducting a postjudgment *Marsden* hearing. (See *People v. Olivencia* (1988) 204 Cal.App.3d 1391, 1400-1401; *People v. Lopez* (2008) 168 Cal.App.4th 801, 815.) As we discuss below, we reject

10

defendant's other claims of error. Therefore, we conclude that limited remand is appropriate in this case.

## II.

## DEFENDANT'S COMPLAINT ABOUT THE TRIAL COURT'S "MULTI-TASKING" IS NOT COGNIZABLE ON APPEAL

At the beginning of the trial, the judge informed the jury that she was the duty judge that week and that one of her responsibilities was to review and sign probable cause statements and search warrants. However, she assured the jury, she would be paying attention to the proceedings and would be reading the court reporter's notes on her computer in "real time." Defendant now contends that the court's multitasking violated his constitutional right to a fair trial by depriving him of a judge who was fully paying attention to the proceedings.

As a general rule, we are limited to deciding those issues that the appellant has preserved for appeal. "'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180,

11

184, fn. 1; see also *Arabia v. BAC Home Loans Servicing, L.P.* (2012) 208 Cal.App.4th 462, 478.)

Here, because defendant did not object in the trial court to the judge's allegedly divided attention, he did not preserve the issue for appeal. Accordingly, we will not address its merits. We note, however, that defendant does not make any effort to demonstrate that he was prejudiced by the judge's multitasking. Rather, he contends that judicial multitasking may be a trend, brought about by budget reductions to the trial courts, which has a "fundamental impact on the administration of justice" and should not be permitted without discussion and analysis. He asks that we publish this opinion to "put parties, counsel, the [L]egislature and the public on notice that this practice exists." He entreats us not to dismiss his contention cavalierly, as the Attorney General does, at least in defendant's opinion. However, because the issue was not litigated below, we do not have a record which permits us to determine either that this is a trend or that it impairs the administration of justice. For that reason, the discussion and analysis defendant seeks must take place in a forum other than this one, i.e., in a trial court in which the issue is litigated or in hearings or debate before the Legislature.

III.

INDEFINITE SVPA COMMITMENTS DO NOT VIOLATE EQUAL PROTECTION

PRINCIPLES

As originally enacted, the SVPA provided for a two-year commitment, renewable only if the state proved to a jury beyond a reasonable doubt that the defendant still met the definition of a sexually violent predator, or SVP. In 2006, the SVPA was amended

12

by Proposition 83, changing the two-year initial commitment to an indefinite commitment subject to annual reports from the California Department of Mental Health assessing the defendant's continued status as an SVP. (*People v. McKee* (2010) 47 Cal.4th 1172, 1183-1184 (*McKee I*).) In *McKee I*, the California Supreme Court rejected due process and ex post facto challenges to Proposition 83. However, it concluded that SVP's are similarly situated with respect to persons committed under other statutes (*id.* at pp. 1196-1207) and directed the appellate court to remand the case to the trial court "for an evidentiary hearing to determine whether the People, applying constitutional equal protection principles, could demonstrate a constitutional justification for imposing on SVP's a greater burden to obtain release from commitment than on those persons committed under the Mentally Disordered Offenders Act (Pen. Code, § 2960 et seq.) (MDO's) and those persons committed after being found not guilty by reason of insanity (Pen. Code, § 1026.5, subd. (a)) (NGI's)." (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1330 (*McKee II*), citing *McKee I*, at pp. 1208-1209.)

In his opening brief, defendant contended that we should reserve ruling on this case until the equal protection issue raised by *McKee I* has been definitively settled. *McKee II*, *supra*, 207 Cal.App.4th 1325, was decided after defendant filed his opening brief. He apparently concedes that, as the Attorney General contends, *McKee II* correctly and definitively resolved the issue by finding that Proposition 83 did not violate equal protection principles. We agree.

13

Following the evidentiary hearing ordered in *McKee I*, in which the trial court found that the SVPA does not violate equal protection, the appellate court in *McKee II* applied the strict scrutiny standard mandated for equal protection analysis and concluded that the state had established both that it has a compelling interest which justifies the challenged procedure and that the distinctions drawn by the procedure are necessary to further that interest. (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1335, 1347-1348.) Specifically, the court found that substantial evidence, including medical and scientific evidence, supported the conclusion that disparate treatment of SVP's was justified: "The People have shown that, 'notwithstanding the similarities between SVP's and MDO's [and NGI's], the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society.' [Quoting *McKee I*, *supra*, 47 Cal.4th at p. 1208.] The People have shown 'that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely[;] . . . that SVP's pose a greater risk [and unique dangers] to a particularly vulnerable class of victims, such as children'; and that SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting a reasonable perception by the electorate that passed Proposition 83 that the disparate treatment of SVP's under the amended [SVP] Act is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered. [Citing and quoting *McKee I,* at p. 1208]." (*McKee II*, at p. 1347.)

We agree with the analysis in *McKee II*, *supra*, 207 Cal.App.4th 1325, and we therefore reject defendant's equal protection claim.

14

# DISPOSITION

The judgment is reversed, and the case is remanded with directions to the trial court to conduct a *Marsden* hearing and exercise judicial discretion to order a new trial, to reinstate the judgment, or to proceed otherwise as authorized by law.

CERTIFIED FOR PARTIAL PUBLICATION

McKINSTER
J.

We concur:

HOLLENHORST
Acting P. J.

RICHLI
J.