Filed 2/23/15  P. v. Hill CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>RICHARD CLINTON HILL,<br><br>　　　Defendant and Appellant. | E060501<br><br>(Super.Ct.No. RIC10009408)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Mark E. Johnson, Judge. Affirmed.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Richard Clinton Hill was civilly committed to a state hospital under the Sexually Violent Predator Act. (Welf. & Inst. Code, § 6600 et seq. (the SVPA).)[1] In a prior appeal, *People v. Hill* (2013) 219 Cal.App.4th 646 [Fourth Dist., Div. Two], Hill contended that he had a due process right to the effective assistance of counsel, and that the trial court violated that right by refusing to consider his *Marsden*[2] motion to replace his court-appointed attorney. We reversed the judgment and remanded the cause for a hearing on Hill's *Marsden* motion. We directed the trial court to conduct the hearing and exercise judicial discretion to order a new trial, to reinstate the judgment or to proceed otherwise as authorized by law. (*People v. Hill*, at pp. 649-654.)

The current appeal follows the denial of Hill's *Marsden* motion after a hearing and the subsequent reinstatement of the judgment. Hill now contends that the court erred in denying the *Marsden* motion because the court failed to focus on the state of the relationship between Hill and his trial attorney, Richard Quintino, at the point in the proceedings when Hill filed the *Marsden* motion, i.e., before the probable cause hearing, but instead examined the quality of counsel's representation at the subsequent trial. Hill also contends that the court's failure to appoint an attorney to represent him for purposes of the *Marsden* hearing mandates reversal.

---

[1] All statutory citations refer to the Welfare and Institutions Code unless another code is specified.

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

We will affirm the judgment.

BACKGROUND

In connection with his *Marsden* motion, Hill related the following background. After serving a term in prison for his conviction for one or more sexual offenses, Hill was released on parole in 2008. He was released without being evaluated as a possible sexually violent predator, or SVP. Shortly thereafter, he was convicted of cultivating marijuana and served another term in prison. He was released on parole in 2009 following service of that sentence.

Hill violated his parole three times and was returned to custody each time. He said that the first violation, for living within 2,000 feet of a park, was "bogus." He was sleeping in a motor home, which he had parked less than 2,000 yards from a site which was labeled "Boulder Park" on Google maps. However, although the site had been dedicated to the city or county as a park, as of the date of the violation it had not yet been developed into a park. He was unable to obtain evidence of that fact before the parole violation hearing, however, and the court found him in violation of his parole. At the *Marsden* hearing, Quintino confirmed that the site was merely designated as a future park and was not yet developed.

The second violation was for possession of pornography. Hill had placed all of his property into a storage unit while he was in prison on the cultivation charge. After his

3

release, he discovered what he described as adult nude images.[3] He was in the process of erasing them when his parole officer walked in and saw them. The images were on the computer before he was released on parole with a condition that he could not possess pornography, and he said he was merely trying to erase the preexisting images in order to comply with the parole condition.

The third violation was for failing to register with the police within five days after changing his residence. He went to the police department three times, but was told that he had to make an appointment and that no appointment was available in less than 30 days. He had told his parole officer that he had attempted to register. One of the violations also involved his failure to attend a mandated parole outpatient clinic, or POC, but he did attend all but one session, and he was merely a few minutes late to that session. Nevertheless, he was found in violation of parole for failure to attend.

Although the chronology of events Hill described is not entirely clear, it appears that before his release on parole following the marijuana cultivation sentence in 2009, he was evaluated by two psychologists to determine whether he qualified as an SVP. One evaluator concluded that he did qualify, while the other concluded that he did not. Two more evaluators examined him, and again, one found that he qualified as an SVP while the other did not. He was not deemed an SVP at that time and was released on parole.

---

[3] Evidence at the SVPA trial apparently showed that there were thousands of nude images on Hill's computer, including some which at least appeared to be minor boys engaged in sexual activity.

After his first parole violation, he was evaluated again, with the same split result. Then after his second or third parole violation, the evaluators found him to meet the criteria of the SVPA. One reason they gave was that he was unable to follow directions and as a result kept violating his parole. Another was that because one of his parole violations was for living within 2,000 feet of a park, he was trying to be near children. A third was that because Hill had failed to attend any of the POC sessions, he was not amenable to treatment.

<u>LEGAL ANALYSIS</u>

HILL HAS NOT SHOWN THAT THE TRIAL COURT

ABUSED ITS DISCRETION

The purpose of a *Marsden* hearing is to permit the defendant to request substitution of counsel if the defendant is dissatisfied with the representation he or she is currently receiving. A defendant has no absolute right to more than one appointed attorney, and a trial court is not bound to accede to a request for substitute counsel unless the defendant makes a ""'"sufficient showing . . . that the right to the assistance of counsel would be substantially impaired"'"" if the original attorney continued to represent the defendant. (*Marsden*, *supra*, 2 Cal.3d at p. 123.) The trial court must afford the defendant the opportunity to explain the reasons for the request for new counsel and to give specific instances of misconduct. (*Id*. at p. 124.) If the trial court does not allow the defendant to state his or her reasons for dissatisfaction with the attorney, the error is reversible if a reviewing court cannot conclude beyond a reasonable doubt that denial of

5

the effective assistance of counsel did not contribute to the defendant's conviction. (*People v. Hill*, *supra*, 219 Cal.App.4th at p. 653.) If, however, the trial court does afford the defendant an adequate opportunity to explain why substitution of counsel is necessary, we review the denial of the motion solely for abuse of discretion. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085.) Here, the court afforded Hill a full opportunity to explain why he believed that his attorney was not representing him adequately, and Hill does not contend otherwise. Accordingly, we review the denial of the motion for abuse of discretion. Denial of a *Marsden* motion "'is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "substantially impair" the defendant's right to assistance of counsel. [Citations.]'" (*People v. Barnett*, at p. 1085.)

Hill contends that it was error not to appoint an attorney to represent him in presenting the *Marsden* motion and, as a result, the hearing was not limited to the state of his relationship with his attorney as of the date the motion was filed. Hill filed his *Marsden* motion after the probable cause hearing but before the trial.[4] In the motion, he stated that his attorney had failed to file a motion to dismiss at the probable cause hearing based on the assertion that "[a]n evaluator's recommendation for or against commitment

---

[4] We take judicial notice of the record on appeal in *People v. Hill*, *supra*, 219 Cal.App.4th 646. (Evid. Code, § 452, subd. (d).) The clerk's transcript in that case shows that the probable cause hearing took place on September 14, 2010, and that Hill filed his *Marsden* motion on January 6, 2011. The record in the current appeal does not contain a file-stamped copy of the *Marsden* motion.

is invalid if there appears a reasonable probability it was influenced by the evaluator's legal error including misinterpretation of the 'likely to reoffend' standard." Hill also stated that his attorney did not impeach prosecution witnesses, did not allow him to challenge the accuracy of the experts' conclusions that he met the criteria for an SVP commitment, did not allow him to call other witnesses who had relevant evidence bearing on the issue of probable cause, and failed to provide him with all relevant medical and psychological records and reports. Hill now complains that instead of focusing on the breakdown in communications between himself and his attorney before the probable cause hearing, the court veered into examining the attorney's performance at trial.

Hill is correct that in hearing the *Marsden* motion, the trial court addressed counsel's performance at trial as well as his performance at the probable cause hearing. However, the court's ruling focused on Quintino's performance at the probable cause hearing: The court found that if it had heard the *Marsden* motion at the time it was made, it would have told Quintino that Hill's concerns should be addressed, but that it would not have discharged Quintino.[5] And, the court found that following the probable cause hearing, Quintino did address the concerns Hill raised. As we discuss below, this was not an abuse of discretion. (*Marsden*, *supra*, 2 Cal.3d at p. 123.)

---

[5] On remand, the *Marsden* motion was heard by the Honorable Mark E. Johnson. The original proceeding in which the trial court held that Hill did not have the right to a *Marsden* hearing (*People v. Hill*, *supra*, 219 Cal.App.4th at p. 649) was heard by the Honorable James T. Warren.

Hill believed that Quintino should have been able to get the petition dismissed at the probable cause hearing. He explained to the court that since he was originally released on parole following his sentence for the sexual offenses, he had lived in the community for 27 years without committing another sexual offense. He believed that his explanations concerning his parole violations vitiated the evaluators' opinions that he was unable to comply with the terms of his parole, particularly since none of the violations was for a "hands-on" sexual offense. He asked Quintino's office repeatedly for copies of the evaluators' reports but did not receive them. He finally received the report of the second evaluator who was to testify and found numerous legal errors in his report, but was unable to contact Quintino to discuss it with him. He summarized his complaint as follows: "He didn't do anything. He didn't provide any defense whatsoever at the probable cause. His words to me were: This is just a formality; you're going to be found guilty. He didn't call one witness for my affect [*sic*]. He didn't explain to the judge. He didn't contest any of the evaluations of falsification in there. . . . [H]e didn't get the parole records showing that I did [attend] POC classes, that I did try to register, that I wasn't sleeping. No defense whatsoever. And . . . he never talked to me ahead of time, so I didn't know. Only because there was a break of a week between the two evaluators was I able to take and evaluate because I kept asking, which was my right, to have copies of the evaluations to see what they said." Quintino also failed to call as witnesses any of the evaluators who said Hill did not meet the SVP criteria.

When the court asked Quintino to respond to Hill's complaints about the probable cause hearing, Quintino said that he did not bring in the parole records because they would have shown that Hill in fact did violate his parole conditions. He said that Hill "consistently failed to understand that the parole violations, although he disputed them, he went to hearing on them and then we really can't undo what was done." He also said that he had lined up the three "negative" evaluators, i.e., the ones who concluded that Hill did not meet the criteria, to testify at the probable cause hearing. He said that the evaluators were not aware of the parole violation for possession of pornography when they performed their original evaluations, and that when they learned about Hill's possession of pornography, they all said that if they had known about it, they would have concluded that he did meet the criteria. He arranged for two more evaluations, and both evaluators said that Hill met the criteria. Accordingly, those evaluators could not challenge the prosecution's witnesses at the probable cause hearing.

The *Marsden* hearing was continued to a later date, and after having reviewed his case file, Quintino amended his prior statement to explain that the three negative evaluators were originally aware of the possession of pornography violation, but that the only information they had at that time was the charge sheet, which contained only a vague description of an image of a "young appearing male." It was only shortly before the SVPA trial that he received a more detailed report about the images, which indicated the computer contained many such images, including male minors apparently engaged in sexual activities. At that point, all of the evaluators except one said that this information

9

changed their opinion as to the likelihood that Hill would reoffend.  Accordingly, his decision not to call those evaluators as witnesses at the probable cause hearing was not the result of the change in their opinions.  Rather, he said, it was his strategy to defer any affirmative defense until the trial because the standard of proof at the probable cause hearing is so low.  He felt that Hill's best chance was to argue that because he had gone 20 or more years without reoffending, the prosecution had failed to meet its burden to show that he was likely to reoffend.  But even that defense was undermined by the possession of pornography.

The trial court concluded that Quintino's performance at the probable cause hearing was not deficient because of the low standard at that type of hearing.  This was not an abuse of discretion.  Probable cause *is* a low standard of proof, below the preponderance of the evidence standard that applies in most civil proceedings.  (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 250-251.)  At a probable cause hearing, the magistrate does not determine whether the defendant is an SVP.  Rather, the magistrate's function is "simply [to] decide whether a reasonable person could harbor a strong suspicion" that the defendant meets the criteria of the SVPA, "i.e., whether such a person could reasonably weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses in favor of harboring such a suspicion." (*Id.* at pp. 251-252.)  Even giving maximum credence to defendant's contention that his parole violations do not validly support any of the SVPA criteria, particularly because he went 27 years without a "hands on" sexual offense, it is clear that reasonable minds could differ:  Even given the

10

pornography possession issue, one evaluator did not believe he met the criteria, while approximately five other evaluators believed that he did meet the criteria. Accordingly, even if Quintino had presented the one evaluator who later testified at trial in Hill's favor, and even if he had addressed the defects Hill asserted as to his parole violations, the evidence presented at the probable cause hearing would have been sufficient to permit a reasonable person to harbor a strong suspicion that Hill did meet the SVPA criteria, and would have compelled a finding of probable cause to take the matter to trial.

It was also not an abuse of discretion not to appoint counsel to represent Hill at the *Marsden* hearing. (*People v. Clark* (2011) 52 Cal.4th 856, 914-917 [trial court has discretion to appoint counsel for *Marsden* hearing].) The court reserved decision as to whether it would appoint counsel until the court understood the complexity of the issues Hill wanted to raise. If, after hearing what Hill had to say, the court felt that the assistance of counsel was necessary "to develop the full weight" of what Quintino allegedly failed to do, it would appoint counsel. After listening to the entire hearing, the court concluded that appointment of counsel was not necessary because Hill had presented every issue intelligently and coherently, and the court understood his contentions. The court's conclusion is supported by the record. Hill presented his case articulately and intelligently, and there is no basis for concluding that he might have achieved a different result if he had been represented by an attorney.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

HOLLENHORST
J.

RICHLI
J.

12