Filed 2/21/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JENNIFER GARCIA,<br><br>    Defendant and Appellant. | D081713<br><br><br>(Super. Ct. Nos. SCD291317,<br>CD295871, MH119205,<br>SCN426026) |

APPEAL from an order of the Superior Court of San Diego County, Cindy D. Davis, Judge. Affirmed.

Paul R. Kraus, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Sahar Karimi, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Based on the opinion of a licensed psychiatrist and a licensed psychologist, the trial court found that Jennifer Garcia was mentally incompetent to stand trial and further found that she lacked the capacity to make decisions regarding the administration of antipsychotic medication.

(Pen. Code,[1] §§ 1368, 1369, 1370.)  On appeal, Garcia alleges numerous errors with the court's order authorizing the state hospital to involuntarily administer antipsychotic medication to her.  She also contends her trial counsel was ineffective in failing to object to the order.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2021, Garcia sent threatening text messages to a Child Welfare Services worker.  Garcia threatened to abduct the worker, "cement" her, and "toss" her into a river for abducting and abusing Garcia's children.  In *People v. Garcia*, No. SCN426026, the San Diego County District Attorney charged Garcia with one count of making threats to a public officer (§ 71); and two counts of disobeying a court order (§ 273.6).

In August 2021, Garcia brought a large kitchen knife into juvenile court.  Video surveillance showed that she had the weapon in her waistband when she walked into a courthouse restroom.  The knife was later recovered from the restroom.  In *People v. Garcia*, No. SCD291317, the San Diego County District Attorney charged Garcia with possessing a weapon in a courthouse (§ 171b, subd. (a)).

In September 2021, Garcia pled guilty to violating section 71 in the threatening case and section 171b, subdivision (a) in the weapons possession case.  The remaining counts were dismissed.  In October 2021, the court sentenced Garcia to two years of formal probation and credit for time served in custody.  In April 2022, the probation office reported that Garcia had violated probation and recommended revocation of probation in ex parte warrants for both cases.

In June 2022, Garcia "stabbed a woman several times in the back, head and neck."  The attack resulted in "several lacerations to the victim" and

---

[1]     All further undesignated statutory references are to the Penal Code.

required "staples and sutures to close" the wounds. In *People v. Garcia*, No. CD294930, the San Diego County District Attorney charged Garcia with attempted murder (§§ 664, 187, subd. (a)) and assault with a deadly weapon (§ 245, subd. (a)(1)). The felony complaint further alleged that Garcia personally used a deadly and dangerous weapon under section 12022, subdivision (b)(1) and personally inflicted great bodily injury under section 12022.7, subdivision (a).

At the consolidated preliminary hearing and probation violation evidentiary hearing in August 2022, Garcia's counsel declared a doubt as to Garcia's mental competence under section 1368. The trial court suspended the criminal proceedings for a determination of Garcia's mental competence.

Psychologist Valerie Rice, Ph.D., evaluated Garcia in September 2022 and filed two reports: one on Garcia's mental competency to stand trial and another on involuntary medications to restore competency. The report on Garcia's mental competency diagnosed her with unspecified schizophrenia spectrum and other psychotic disorder. "Due to her delusions and thought disorganization, she was unable to demonstrate an understanding of the nature of the criminal proceedings." "[D]ue to her symptoms of severe mental illness, she was unable to participate in a rational discussion of her legal cases." The report concluded that Garcia "should be found incompetent to stand trial."

Dr. Rice's report on involuntary medications referenced the evaluation for mental competency. It found that Garcia "is suffering from a severe mental disorder with psychotic features, which requires medical treatment with antipsychotic medication. Without appropriate treatment with antipsychotic medication, it is likely that the serious harm will come to the physical and/or mental health of [Garcia]. Due to her impaired mental

health, [Garcia] is unable to make rational decisions regarding antipsychotic medication." Dr. Rice's report also found that Garcia had been "seen by the jail psychiatrist several times and prescribed multiple antipsychotic medications; however, she has been noncompliant with these medications, which have been subsequently discontinued."

Following Garcia's lack of agreement with Dr. Rice's reports, the court ordered a second forensic evaluation from a different doctor. Forensic psychiatrist Sandeep Jouhal, M.D., evaluated Garcia in December 2022 and also filed two reports, one on Garcia's mental competency and another on involuntary medication. Dr. Jouhal diagnosed her with unspecified psychosis and stimulant use disorder. Like Dr. Rice, Dr. Jouhal concluded Garcia's "symptoms of mental illness render [her] incapable of having a rational understanding of her charges or assist her legal counsel in preparation of her defense." Dr. Jouhal's involuntary medication report found that Garcia "lacks the capacity to make decisions regarding antipsychotic medications. The mental disorder requires medical treatment with antipsychotic medication at this time. If [Garcia's] mental disorder is not treated with antipsychotic medication, it is possible that serious harm to [her] . . . physical or mental health . . . will result."

Later in December 2022, the court conducted a hearing regarding Garcia's mental competency. Both parties stipulated to the qualifications of Dr. Rice and Dr. Jouhal and agreed that their reports could be entered into evidence. The court found Garcia was not mentally competent "based on both reports and the Court's observations." Regarding antipsychotic medication, the court stated that both doctors "believe that she really does need medication, . . . that she has had antipsychotic medication in the past, but she is now refusing it[,] . . . [and] without appropriate treatment, serious

4

harm could come to her physically or mentally." The court also noted that "[s]he does present potential danger to the health and safety of others."

## DISCUSSION

## I.

*Substantial Evidence Supported the Involuntary Antipsychotic Medication Order*

A court's order authorizing a state hospital to administer antipsychotic medication involuntarily to a defendant will be upheld on appeal so long as it is supported by substantial evidence. (*People v. Lameed* (2016) 247 Cal.App.4th 381, 397.) Our "review of the sufficiency of the evidence in support of a finding requiring clear and convincing proof must account for the level of confidence this standard demands."[2] (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.) Accordingly, "the question before [us] is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Id*. at pp. 995–996.)

Garcia contends that there are multiple reasons why substantial evidence did not support the trial court's involuntary antipsychotic medication order. First, she disputes the sufficiency of the evidence of the third statutory condition for the court's order: "if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the defendant will result." (§ 1370, subd. (a)(2)(B)(i)(I).) Second, she contends that Dr. Rice exceeded the

_____

2    Garcia argues that clear and convincing evidence is the applicable standard of proof. The People do not dispute Garcia's contention. We are not aware of a published decision addressing the standard of proof in this context and assume without deciding that clear and convincing evidence is the applicable standard of proof.

5

scope of her license, in violation of section 1369, subdivision (a)(2)(B). Third, Garcia contends the opinions of Dr. Rice and Dr. Jouhal lacked statutorily required information, in violation of section 1369, subdivision (a)(2)(B) and subdivision (a)(2)(C). We disagree with Garcia on each of these points.

A.    *The Opinions of the Examining Doctors Provided Substantial Evidence That Serious Harm Would Probably Result Without Antipsychotic Medication*

A trial court is required to permit involuntary administration of antipsychotic medication if it finds one of three sets of conditions to be true. (§ 1370, subd. (a)(2)(B)(i)(I)–(III) & (ii).) Here, the trial court found the evidence established the first of those sets of conditions: "Based upon the opinion of the psychiatrist or licensed psychologist offered to the court pursuant to subparagraph (A) of paragraph (2) of subdivision (a) of Section 1369, [1] the defendant lacks capacity to make decisions regarding antipsychotic medication, [2] the defendant's mental disorder requires medical treatment with antipsychotic medication, and, [3] if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the defendant will result." (§ 1370, subd. (a)(2)(B)(i)(I).) Garcia disputes only the third condition—that she would probably suffer serious harm without antipsychotic medication.

The statute has additional specificity regarding the third condition. (§ 1370, subd. (a)(2)(B)(i)(I).) It explains that a probability of serious harm requires evidence that either (1) "the defendant is presently suffering adverse effects to their physical or mental health," or (2) "the defendant has previously suffered these effects as a result of a mental disorder and their condition is substantially deteriorating." (*Ibid.*) The statute further states

6

that "a diagnosis of a mental disorder does not alone establish probability of serious harm." (*Ibid.*)

Substantial evidence showed that Garcia was "presently suffering adverse effects to [her] physical or mental health." (§ 1370, subd. (a)(2)(B)(i)(I).) Dr. Rice's report on Garcia's mental competency stated that Garcia exhibited symptoms of severe mental illness with "grandiose and paranoid delusions, mostly revolving around her belief that her children were being sex trafficked and CPS had made false allegations against her." During her interview, Garcia said that "[s]omebody threw bleach in my eyes and glass in my eyes. I think they left a piece of glass in my forehead." Dr. Jouhal similarly observed Garcia's "thought process was scattered and illogical," and her "thought content was significant for bizarre and paranoid delusions." Dr. Jouhal described Garcia as "uncooperative" and as "irritable, rambling extensively and difficult to interrupt." During her interview, Garcia "became acutely agitated and [began] yelling," including that "[t]here is human trafficking being run here, and I have already reported it!" Both doctors concluded Garcia suffers from a mental illness, her symptoms rendered her incapable of having a rational understanding of the charges against her, and she was incompetent to stand trial. They both also determined she lacked the capacity to make decisions about her medication due to her impaired mental health. In making their determinations, both doctors relied on prior psychiatric reports, jail notes, the criminal case file, and their interviews with Garcia.

Both doctors filed a report on involuntary medication that referenced their mental competency report and found that Garcia had "severe" mental illness that "requires treatment with antipsychotic medication." Dr. Rice found that, "[w]ithout appropriate treatment with antipsychotic medication,

7

it is likely that serious harm will come to the physical and/or mental health" of Garcia. Dr. Jouhal similarly found that if Garcia's "mental disorder is not treated with antipsychotic medication, it is possible that serious harm to the physical or mental health of [Garcia] will result." Further, Dr. Jouhal opined that "[a]ntipsychotics are in [Garcia's] best medical interest in light of the medical condition." Dr. Rice concluded that "the court may order involuntary medications under Penal Code Section 1370," while Dr. Jouhal recommended that Garcia "be given medications involuntarily under Penal Code Section 1370."

The doctors' reports separately and in combination provided substantial evidence that Garcia was presently suffering adverse effects to her mental health. The court relied on both reports when it issued the involuntary antipsychotic medication order. The reports therefore provided substantial evidence that the third condition of section 1370, subdivision (a)(2)(B)(i)(I), was satisfied.

Garcia argues that accepting the symptoms identified above as evidence of adverse effects to her mental health violates the statutory mandate that "a diagnosis of a mental disorder does not alone establish probability of serious harm to the physical or mental health of the defendant." (§ 1370, subd. (a)(2)(B)(i)(I).) We disagree. Garcia is correct that Dr. Rice and Dr. Jouhal relied on those symptoms in diagnosing her with severe mental illness. But that does not prevent those symptoms from providing evidence of adverse effects to Garcia's health. The statute only requires not using the "diagnosis of a mental disorder" alone to establish probability of serious harm. (§ 1370, subd. (a)(2)(B)(i)(I), italics added.) It does not preclude using symptoms of the diagnosis to show adverse effects to Garcia's health to establish a probability of serious harm. (See *ibid*.)

8

Garcia also contends that the doctors' involuntary medication reports included "conclusory, perfunctory language" regarding the likelihood of serious harm to Garcia. She contends that those reports do not identify the alleged harm. But Garcia ignores those reports' reference to the respective mental competency reports prepared and submitted contemporaneously and they "evaluated" Garcia regarding her "mental competency" and "opined" that she was not competent "to stand trial." As we have explained, the referenced reports contained substantial detail regarding adverse effects to Garcia's health. Nothing in section 1370, subdivision (a)(2)(B)(i)(I), prevents the court from considering evidence contained in a contemporaneous report referenced by an opinion on involuntary antipsychotic medication.

We therefore conclude that substantial evidence supports the court's findings.

B. *Dr Rice's Opinion Did Not Exceed the Scope of Her License*

In her supplemental briefing on appeal, Garcia asserts that Dr. Rice offered an opinion that exceeded the scope of her license in violation of section 1369, subdivision (a)(2)(B). We disagree.

An order permitting the involuntary administration of antipsychotic medication must be supported by a psychiatrist or licensed psychologist (§ 1370, subd. (a)(2)(B)(ii)(I)–(II).) The requirements are set forth in section 1369, which states that the psychiatrist or licensed psychologist "shall evaluate . . . whether treatment with antipsychotic medication . . . is appropriate for the defendant." (§ 1369, subd. (a)(2)(A).) There are different requirements depending on whether the evaluator is a psychiatrist or a licensed psychologist. (*Ibid*.) When the evaluation is performed by a licensed psychologist, "if [that] psychologist examines the defendant and opines that treatment with antipsychotic medication may be appropriate, their opinion

9

shall be based on whether the defendant has a mental disorder that is typically known to benefit from that treatment." (*Id.*, subd. (a)(2)(B).) The psychologist's opinion "shall not exceed the scope of their license" and "is not a prescription for [the antipsychotic] medication." (*Ibid.*) In contrast, when the evaluation is performed by a psychiatrist, the psychiatrist shall opine whether "treatment with antipsychotic medication is appropriate," and shall "inform the court of their opinion as to the likely or potential side effects of the medication, the expected efficacy of the medication, and possible alternative treatments." (*Id.*, subd. (a)(2)(C).)

Garcia contends that Dr. Rice exceeded the scope of her license when she opined that Garcia "is suffering from a severe mental disorder with psychotic features, *which requires* medical treatment with antipsychotic medication." (Italics added.) Garcia asserts that Dr. Rice exceeded the limits of section 1369, subdivision (a)(2)(B), which she claims only allows psychologists to conclude treatment with antipsychotic medication "may be appropriate." But the preceding provision (§ 1369, subd. (a)(2)(A)) provides that psychologists "shall evaluate" whether treatment with antipsychotic mediation "is appropriate." Accordingly, the "may be appropriate" language of section 1369, subdivision (a)(2)(B) does not limit licensed psychologists in the certainty with which they may express their findings.

On the contrary, the restriction on a psychologist's opinion exceeding the scope of their license appears to be focused on the specific antipsychotic medication to be prescribed. This is supported by two elements of the statute. First, the provision regarding licensed psychologists explains that an "opinion about the potential benefit of antipsychotic medication" (in general) "is not a prescription for that medication." (§ 1369, subd. (a)(2)(B).) Second, the provision regarding psychiatrists has another requirement that

10

they "inform the court of their opinion as to the likely or potential side effects of the medication, the expected efficacy of the medication, and possible alternative treatments." (§ 1369, subd. (a)(2)(C).) The fact that licensed psychologists do not have such a requirement indicates that, while they cannot opine about specific medications, they may opine as to whether antipsychotic medication generally "is appropriate." We thus conclude that Dr. Rice did not exceed the scope of her license by opining that Garcia "is suffering from a severe mental disorder which requires medical treatment with antipsychotic medication."

C.    *Dr. Rice's and Dr. Jouhal's Opinions Did Not Lack Statutorily Required Information*

Garcia argues that Dr. Rice violated section 1369, subdivision (a)(2)(B), by failing to opine that Garcia "has a mental disorder that is typically known to benefit from that treatment." But there is no such requirement in that provision; it merely provides that the opinion "shall be *based on* whether the defendant has a mental disorder that is typically known to benefit from that treatment." (§ 1369, subd. (a)(2)(B), italics added.) Dr. Rice diagnosed Garcia as suffering from unspecified schizophrenia spectrum and other psychotic disorder and then concluded that her disorder "requires medical treatment with antipsychotic medication." This suggests Dr. Rice understood Garcia's mental disorder was typically known to benefit from treatment with antipsychotic medication and based her opinion on that fact. Nothing else is required by section 1369, subdivision (a)(2)(B).

Garcia also contends that Dr. Jouhal's opinion violated section 1369, subdivision (a)(2)(B) and section 1370 by failing to opine on "the likely or potential side effects of the medication." Section 1369, subdivision (a)(2)(C) states, "the psychiatrist shall inform the court of their opinion as to the likely

11

or potential side effects of the medication, the expected efficacy of the medication, and possible alternative treatments." (§ 1369, subd. (a)(2)(C).) Section 1370 provides that when determining whether to order involuntary medication based on the psychiatrist's opinion, the court will consider whether the medication "is substantially likely to render the defendant competent to stand trial, the medication is unlikely to have side effects that interfere with the defendant's ability to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a reasonable manner, less intrusive treatments are unlikely to have substantially the same results, and antipsychotic medication is appropriate in light of their medical condition." (§ 1370, subd. (a)(2)(B)(i)(III).)

Here, Dr. Jouhal's report contained the required information. It states, "Administration of antipsychotic medication is likely to restore the defendant's competency to stand trial. Monitored medications are unlikely to interfere with the defendant's ability to understand the nature of the current proceedings or to assist counsel in a rational manner. Less intrusive treatments are unlikely to have the same result. Antipsychotics are in the defendant's best medical interest in light of the medical condition."

We thus conclude that Dr. Rice's and Dr. Jouhal's reports were proper under sections 1369 and 1370.

II.

*The Error on the Superior Court Form Was Harmless*

Garcia points to an error in the language of the Superior Court's form order.[3] The form has a box for the court to check if it finds that without treatment with antipsychotic medication, "it is *possible* that serious harm to the physical or mental health of the patient will result." (Italics added.) This language is different than the statutory standard requiring a finding that "it is *probable* that serious harm to the physical or mental health of the defendant will result." (§ 1370, subd. (a)(2)(B)(i)(I), italics added.) We conclude that it was a harmless error.

The parties agree that the error should be analyzed under the stricter *Chapman* standard, and we assume without deciding that *Chapman* applies. (*Chapman v. California* (1967) 386 U.S. 18, 24; see also *Sell v. United States* (2003) 539 U.S. 166, 178 ["an individual has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs' "]; *People v. Hill* (2013) 219 Cal.App.4th 646, 652–653 [applying *Chapman* to a statutory right in a civil commitment proceeding because "that right is protected by the due process clause of the federal Constitution"].) Under *Chapman*, the error must be "harmless beyond a reasonable doubt." (*Chapman*, at p. 24.) Here, the form order purported to apply a "possible" standard that was less stringent than the statute's "probable" standard.

During the hearing, the court explained that its findings were based on "two reports, one from Dr. Valerie Rice and one from Dr. Jouhal" and the

---

3    The form order is "SUPCT MH-23 (Rev. 3-06)" and is titled, "Judgment of Mental Incompetency and Order for Commitment (Penal Code 1370 & 1372(a)(2))." (Capitalization omitted.)

court's "observations." Dr. Rice's report applied the correct standard when she concluded "[w]ithout appropriate treatment with antipsychotic medication, it is likely that serious harm will come to the physical and/or mental health" of Garcia. Garcia concedes that "likely" has a substantially similar meaning to "probable." Although Dr. Jouhal's report stated that harm was "possible," the court's ruling considered both reports, its own observations, and the standard under section 1370.

As discussed earlier, the doctors' conclusions were supported by ample evidence of the symptoms and harm Garcia has suffered due to her mental disorder. Garcia has not identified any substantive weaknesses in the doctors' reports nor any evidence contradicting their findings. Their findings and conclusions would have equally supported the court's order if it had stated serious harm was "probable," rather than merely "possible." Accordingly, the form order's error was harmless beyond a reasonable doubt.

III.

*Garcia Was Not Prejudiced by Any Ineffectiveness of Counsel*

Garcia's final argument is that her attorney was ineffective when she failed to "object to the entry of an involuntary psychiatric medication order." To succeed, Garcia needs to demonstrate that her counsel's ineffective performance caused her prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 693; *People v. Williams* (1997) 16 Cal.4th 153, 215.) "Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Williams*, at p. 215.) She has not shown prejudice here.

Garcia asserts "[a] more favorable outcome is reasonably probable because of the evidentiary weaknesses in the prosecution case." However, we already evaluated and rejected the claimed weaknesses in connection with

14

the third statutory condition.  Further, even if Garcia's trial counsel had objected, we have already concluded that the court would have made the same findings under the "probable" standard.  Garcia has not established a reasonable probability that a different result would have occurred if her trial counsel had objected.

## DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:


IRION, J.


DO, J.