Filed 8/20/20  P. v. Raker CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JEFFREY RAKER,<br><br>Defendant and Appellant. | B299718<br><br>(Los Angeles County<br>Super. Ct. No. ZM013684) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David W. Stuart, Judge.  Affirmed.

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

The Los Angeles County District Attorney filed a petition to civilly commit appellant Jeffrey Raker under the Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.)[1] in September 2008. Shortly before the June 2019 bench trial on the petition, appellant made a motion under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) to obtain "conflict counsel" who could file a motion to dismiss the case as unduly delayed under *People v. Litmon* (2008) 162 Cal.App.4th 383 (*Litmon*) and *People v. Superior Court (Vasquez)* (2018) 27 Cal.App.5th 36 (*Vasquez*). The trial court denied the *Marsden* motion after holding a closed hearing.

Appellant subsequently gave his counsel two written motions seeking to replace counsel due to a conflict. Appellant's counsel presented the motions to the trial court but did not join or file them. Appellant's counsel then represented appellant at the trial, at which appellant waived his presence. At the conclusion of the trial, the trial court granted the petition.

Appellant now contends the trial court erred by denying his initial *Marsden* motion. He further argues that his counsel's refusal to file the motions he subsequently proffered demonstrated a conflict of interest that interfered with his Sixth Amendment right to counsel. In addition, appellant contends his due process rights have been violated because a portion of the record in this matter has been lost. We reject these contentions and affirm.

## BACKGROUND

In 1996, appellant pled no contest to seven counts of lewd acts upon a child (Pen. Code, § 288, subd. (a)), six counts of

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

continuous sexual abuse of a child (Pen. Code, § 288.5), four counts of oral copulation of a person under age 14 (Pen. Code, § 288a, subd. (c)), and one count of oral copulation of a person under age 16 (Pen. Code, § 288a, subd. (b)). Appellant was sentenced to 16 years in state prison.

On September 19, 2008, the Los Angeles County District Attorney filed a petition under the SVPA to civilly commit appellant as a sexually violent predator (SVP). The petition is not contained within the appellate record, nor are any records documenting proceedings that occurred between the petition's filing and March 2, 2011. The superior court informed appellate counsel that the portion of the record containing those documents could not be located.

The appellate record begins with a minute order dated March 3, 2011. Like many minute orders in the record, it documents a pretrial hearing culminating in a continuance of the proceedings. We do not detail those numerous orders here; instead, we highlight only a few events that occurred prior to the motions at issue in this appeal.

On August 22, 2011, after engaging in a colloquy with the court, appellant personally waived his right to a speedy probable cause hearing.[2] (See § 6602.) The court specifically asked appellant, "We have updated current evaluations from the evaluators in your case from June and July of this year; however, your attorney has indicated that you do not wish to proceed to trial at this time; is that correct?" Appellant said that it was. He

---

[2]The record suggests that appellant either waived his right to a probable cause hearing or stipulated that there was probable cause in December 2008. That waiver or stipulation at some point was withdrawn.

3

further agreed to "inform the court and counsel when you believe that you are ready to proceed to trial."

On February 6, 2013, appellant's counsel, deputy public defender Alan Morgenstern, filed a written waiver of appellant's appearance at the proceedings and speedy trial rights. The filing, which was signed by appellant and dated March 28, 2012, included the following language: "I understand I have a right to a trial pursuant to the due process clause of the Federal and State Constitutions, the SVP Statute under WIC § 6600 et seq[.] and pursuant to court case *People v. David Litmon* [, *supra*,] 162 Cal.App.4th 383. At this time, I do not wish to exercise my *Litmon* rights and request that my case be delayed. I will notify the court and/or my counsel when I desire to have a trial. [¶] I have discussed this case and my rights with my attorney; I understand his explanations and I elect not to have my trial at this time."

The court held a probable cause hearing on the petition on October 7, 2013, October 9, 2013, and December 3, 2013. At the conclusion of the hearing, the court found "that there is a strong suspicion that the person named in the petition JEFFREY RAKER: [¶] (1) Has been convicted of a qualifying sexually violent offense. [¶] (2) That the defendant suffers from a diagnosable mental disorder. [¶] (3) That the disorder makes it likely that they will engage in sexually violent criminal conduct if released (In making this finding, the Court has considered, among other factors, the defendant's amenability to voluntary treatment), and [¶] (4) That the sexually violent criminal conduct will be predatory in nature."

On June 26, 2014, Morgenstern informed the court that he was being transferred out of the public defender unit that handles SVP cases. Deputy public defender Sarah Soher replaced him.

4

On October 25, 2016, Soher informed the court that she did not believe that her trial schedule would permit her to try appellant's case in 2017. The court directly asked appellant, who was present via video conferencing, for his "view about the timing for your trial." Appellant stated, "I have no problem with it. I have no problem. I'm getting hip surgery next year. So it works in with my schedule."

On June 27, 2017, new counsel, deputy public defender Alvin V. Thomas, appeared for appellant.

On March 19, 2018, the court set appellant's trial for December 5, 2018.

On November 26, 2018, Thomas informed the court that his expert witness had not been able to update her evaluation of appellant due to scheduling issues. The court advised appellant, who was present via video conferencing, that his expert, whose evaluation was "very important for your trial," would not be able to see him before trial. "So I would have to vacate that trial date and set a new pretrial date in January with an eye towards setting a new trial date after that. [¶] Are you agreeable to all of that?" Appellant stated, "Yes, I am, Judge."

On January 14, 2019, Thomas informed the court that appellant was scheduled for a medical procedure on January 15, 2019 and his hip surgery in February 2019. The parties agreed to continue the matter.

On March 11, 2019, appellant appeared at a pretrial hearing via video conference. Thomas told the court that he expected the matter "to be back on track as far as the trial goes." The court advised appellant that the trial was scheduled for June 12, 2019, and stated that it "looks like you will get your trial in June unless something else happens." Appellant responded, "All right. Thank you."

At the next pretrial hearing, on April 15, 2019, appellant appeared via video conference. He told the court he was "agreeable" to putting the matter over, as he had another medical procedure scheduled for April 26, 2019.

At the next hearing, on May 13, 2019, appellant again appeared via video conference. When the court asked him to confirm Thomas's representation that he intended to waive his appearance at trial, appellant responded that he would "like to read a statement." Due to a poor video connection, the court was unable to understand the statement. It ordered appellant to mail the statement to the court to be put in the file; "[i]t will be as though you read it into the record."[3]

At the next hearing, on May 20, 2019, Thomas reminded the court that appellant "at the last appearance was attempting to file a *Vasquez* type motion." Thomas further advised the court that he had discussed the motion with appellant, and that "along with the *Vasquez*-[*Litmon*] type motion, was intending to file a *Marsden* motion." The court responded that it had not yet received the statement. It told appellant, who had again appeared via video conference, that it would rule on the motion at the next hearing, scheduled for June 3, 2019.

The court received appellant's statement on May 21, 2019. The statement read, in relevant part:

"I hereby request that your honor address an actual conflict of interest pursuant to *Harris v. Superior Court*, 225 Cal.App.4th

---

[3]Appellant also attempted to disqualify the judge pursuant to Code of Civil Procedure section 170.6 "for bias and prejudice." Because his counsel did not join the motion, the trial court ultimately found the motion "deemed not filed, not filed but made." (See *People v. Frierson* (1985) 39 Cal.3d 803, 813 [including "whether a particular trial judge should be challenged" among tactical matters within the control of an attorney].)

1129 (2014).  As noted in *Harris*, the right to the effective assistance of counsel is a substantial right guaranteed by the Sixth Amendment and by article I, section 15 of the California Constitution.  This constitutionally guaranteed right includes the correlative right to counsel who is free from any conflict of interest that undermines counsel's loyalty to his client's cause. Moreover, as a general proposition, such conflicts embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person ***or by his own interests***.  If a conflict of interest ***impedes defense counsel from asserting his client's contentions without fear of consequences to himself*** or herself, the integrity of the adversary system is cast into doubt because counsel cannot 'play the role necessary to ensure that the trial is fair.' . . .

"[C]urrent counsel . . . is so burdened by his own self-interests that he cannot and will not say all that is to be said on my behalf with respect to a motion to dismiss which relies, in part, on his own legal malpractice; this has created an actual conflict.

"Therefore, I respectfully request the honorable court appoint independent counsel to confer with your humble petitioner and file such equitable pleadings for dismissal as will address the due process violations which have thus far taken place in this case; I contend that all parties in this process have acted together to deny me due process of law.  The court has permitted continuances without any good cause showing by either side.  The people have failed, without good cause to bring my case to trial in a timely manner; and my own counsel has failed to offer any showing of good cause for the continuances to have gone on for over a decade."

7

On June 3, 2019, appellant again appeared via video conference. The court told him that it had received the statement and concluded it was "in the nature of a *Marsden* motion." It then cleared the courtroom for a *Marsden* hearing with appellant and Thomas. At the outset of the *Marsden* hearing, appellant told the court, "It's not a *Marsden*. It's a motion to have a conflict attorney." The court disagreed, noting, "you're claiming there's an irreconcilable conflict." The court then asked Thomas why he thought he could still represent appellant. Thomas stated that he had been "pretty diligent in preparing the matter for trial," and "just recently learned that Mr. Raker was dissatisfied with the progress at which the case was going to trial." The court then observed that trial of the matter was set for later in the month, and asked appellant if "your view is that notwithstanding you have a trial June 12th, you're entitled to a dismissal now?" Appellant confirmed that was his position. After further explanation from Thomas, the court stated, "now I'm understanding it's not a *Marsden* motion at all, it's something different."

The court again asked Thomas for his thoughts. He stated, "I believe our office has been diligent in preparing Mr. Raker's case for trial. . . . I don't think that there's been any delay, any unnecessary delay. And I think the records, the court records would reflect that." The court stated, "Well the petition was filed in '08, but we've set a trial. We set the trial date on April 15th and continued to May 13, at which point Mr. Raker agreed to that continuance. He had surgery in February; right?" Thomas confirmed that was correct, and the court continued, "He waived his jury trial appearance, okay. I think I know what I'm going to do. The motion is denied. I find that there isn't such a conflict that would require separate counsel at this point."

8

Appellant's bench trial commenced on June 13, 2019. He was not present; he had reiterated his waiver of that right at the preceding hearing. Thomas advised the trial judge that appellant had "sent to me a notice of actual conflict," along with "a similar *Marsden*-type motion, similar to the issue that was heard" by the court previously. Thomas stated that he "called Mr. Raker and I spoke to him about both motions. I informed him that he sent them to the court; that I would not be joining in these motions; and I don't agree with any of the propositions he has in the motions; these are similar issues that were heard by Judge Ryan on - - back on June 3rd. [¶] But, after talking to a representative in my appellate department, out of an abundance of caution, I informed Mr. Raker that I would - - without joining in the motions - - I would present them to the court and let the court decide how to handle it. Once again, these are not my motions; they are not from my office. These are Mr. Raker's motions."

The court stated, "Well, Mr. Thomas, you are the attorney of record, and Mr. Raker is not pro per. He may not file motions on his own. You can file the motions that you think are appropriate. So whatever he mailed to you, directly to your office, it's up to you to decide whether there's some merit in any motion to be filed. So we're not going to accept for filing any motions that Mr. Raker files or mails directly to the court. We'll place it in the court file and - - but it won't be officially filed in this action. . . . [¶] The *Marsden* was already heard and denied via video conference on June 3rd; is that correct?" Thomas confirmed it was. The court then continued, "Okay. So he is not here, so - - he can't make a *Marsden* motion if he is not here. And we're not in the department that has video conferencing."

Thomas subsequently attempted to give appellant's motions to the court. The court stated, "I don't want them. They were mailed to you. . . . If you think that there's a colorable

9

motion in what he is sending you, then that's up to you." Thomas responded, "I'm not joining. We're not filing."

The bench trial concluded on June 21, 2019. The court found the allegations in the petition to be true and found that appellant was an SVP. The court ordered appellant committed to the custody of the State Department of Mental Health pursuant to section 6604 "for an indeterminate time until such time that they are entitled to be released according to the law."

Appellant timely appealed.

## DISCUSSION

### I. *Marsden* and *Litmon/Vasquez* Motions

Appellant argues that the trial court erred by denying his initial *Marsden* motion "in light of the conflict of interest and breakdown in the attorney client relationship." He further contends that an irreconcilable conflict arose when his counsel declined to file his subsequent *Marsden* and/or *Litmon/Vasquez* motions. We disagree.

### A. Legal Principles

Proceedings under the SVPA are civil in nature. However, a person alleged to be an SVP is afforded a number of procedural safeguards commonly associated with criminal trials. (*Reilly v. Superior Court* (2013) 57 Cal.4th 641, 648.) He or she is entitled to the assistance of counsel at the probable cause hearing. (§ 6602, subd. (a).) An alleged SVP is also "entitled to a trial by jury, to the assistance of counsel [at that trial], to the right to retain experts . . . and to have access to all relevant medical and psychological records and reports." (§ 6603, subd. (a).) The People bear the burden of proving beyond a reasonable doubt that the person is an SVP. (§ 6604.)

An alleged SVP's right to counsel "includes the right to representation free of conflicts of interest that may compromise the attorney's loyalty to the client and impair counsel's efforts on

10

the client's behalf."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)
It also includes the right to discharge or substitute appointed
counsel, if the failure to do so would substantially impair his or
her rights.  (*Marsden, supra*, 2 Cal.3d at p. 123; *People v. Hill*
(2013) 219 Cal.App.4th 646, 652 ["a defendant in an SVPA
proceeding has a due process right to a *Marsden* hearing"].)  An
alleged SVP is entitled to substitute his or her counsel if the
record clearly shows that appointed counsel is not providing
adequate representation or that the alleged SVP and counsel
have developed such an irreconcilable conflict that effective
representation is unlikely.  (*People v. Jackson* (2009) 45 Cal.4th
662, 682.)  Tactical disagreements between the client and counsel
do not by themselves constitute irreconcilable conflict.  (*Id.* at p.
688.)  There is no absolute right to substitute counsel.  (*People v.
Gutierrez* (2009) 45 Cal.4th 789, 803.)  Whether to do so lies
within the discretion of the trial court; we review the trial court's
decision on a *Marsden* motion for abuse of that discretion.  (*Ibid.*)

In addition to a statutory right to counsel, alleged SVPs
also have a due process right to be heard at a "meaningful time."
(*Litmon, supra*, 162 Cal.App.4th at pp. 395, 399.)  The SVPA does
not establish a time frame within which trial must be held after
probable cause to support the petition has been found.  (*Vasquez,
supra*, 27 Cal.App.5th at p. 57.)  While lengthy or even "extreme"
delay in bringing an SVP matter to trial may be considered
"oppressive" (*Litmon, supra*, 162 Cal.App.4th at p. 406), it is not
alone indicative of a due process violation. (*Vasquez, supra*, 27
Cal.App.5th at p. 69.)  Neither the California nor United States
Supreme Court has decided what standard should be used to
evaluate due process claims stemming from delays in SVP trials.
But our courts of appeal have reviewed such claims under the
balancing tests set forth in *Barker v. Wingo* (1972) 407 U.S. 514
(*Barker*) and *Mathews v. Eldridge* (1976) 424 U.S. 319 (*Mathews*).

11

(See, e.g., *Litmon*, *supra*, 162 Cal.App.4th at pp. 396-406; *People v. Landau* (2013) 214 Cal.App.4th 1, 33.)

*Barker*, *supra*, 407 U.S. at p. 530 articulated four factors a trial court should consider in determining whether a particular (criminal) defendant has been deprived of the right to speedy trial: the length of the delay, the reason for the delay, whether the defendant asserted his or her right to speedy trial, and whether the defendant was prejudiced by the delay. *Barker* cautioned that none of the factors is "either a necessary or a sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." (*Id.* at p. 533.) Similarly, *Mathews*, *supra*, 424 U.S. at pp. 334-335, which considered the process due in connection with the administrative termination of Social Security benefits, recognized that the flexibility of due process required the balancing of three factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."

Applying those tests in the SVP context, the *Litmon* court concluded that a delay in trial occasioned by the prosecutor's schedule and witness availability violated an SVP's due process rights. (*Litmon*, *supra*, 162 Cal.App.4th at pp. 406-407.) Similarly, in *Vasquez*, the court concluded that the "extraordinary" 17-year delay in bringing an SVP petition to trial resulted from "'a systemic "breakdown in the public defender system"'" in Los Angeles County that forced the alleged SVP,

12

Vasquez, to choose between having prepared counsel and a timely trial despite his entitlement to both. (*Vasquez, supra,* 27 Cal.App.5th at p. 41.) Both of those cases concluded that the appropriate remedy was dismissal of the petition. Motions seeking dismissal of SVP petitions on similar grounds accordingly are referred to as *Litmon* or *Vasquez* motions; we use both names here. We review a trial court's ruling on a *Litmon* or *Vasquez* motion to dismiss for pretrial delay for abuse of discretion. (*Vasquez, supra,* 27 Cal.App.5th at p. 55.)

### B. Analysis

In his initial *Marsden* motion, appellant asserted that "all parties in this process have acted together to deny me due process of law. The court has permitted continuances without any good cause showing by either side. The people have failed, without good cause to bring my case to trial in a timely manner; and my own counsel has failed to offer any showing of good cause for the continuances to have gone on for over a decade." These assertions are not supported by the record. As detailed above, appellant was aware that *Litmon* guaranteed him the right to a speedy trial as early as March 28, 2012, when he signed a document acknowledging and affirmatively waiving that right. Appellant nevertheless subsequently agreed to continue his trial numerous times. In October 2016, he repeatedly stated that he had "no problem" continuing the trial from 2017 to 2018. As 2018 came to a close, appellant told the court he was "agreeable" to delaying the trial further. Appellant further agreed to put the matter over several times to accommodate his medical procedures, and raised no objection as late as April 2019 to his trial being held in June 2019. At the *Marsden* hearing, appellant's counsel informed the court that he had "just recently learned that Mr. Raker was dissatisfied with the process at which

13

the case was going to trial." Counsel's characterization is in accordance with the record.

"[T]he defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." (*Barker*, *supra*, 407 U.S. at p. 528.) Here, appellant raised no issue regarding the timeliness of his trial until the eleventh hour. He likewise failed to allege any specific issues with counsel's performance, even when afforded the express opportunity to do so at the *Marsden* hearing. The trial court did not abuse its discretion in denying the motion to appoint substitute or "conflict" counsel.

Appellant asserts that his case "was handled by the very same department, during the very same time period, that was found to have been sufficiently flawed at a systemic level to have denied George Vasquez due process." He invites us to conclude that the same issues "necessarily impacted appellant's case the same as Vasquez's case." We decline to engage in such speculation. In *Vasquez*, counsel "complained about her ability to prepare for trial given the 50 percent reduction in staffing at the public defender's office and the resulting increase in her workload," and the record revealed that "Vasquez only acquiesced in the continuances to enable his attorneys to be prepared for trial." (*Vasquez*, *supra*, 27 Cal.App.5th at p. 62.) The record here at best is minimally suggestive of similar issues. Appellant's attorney Soher had a heavy 2017 trial calendar, but neither she nor the other two attorneys who represented appellant alerted the court to systemic staffing problems. More importantly, there is no evidence that appellant "only acquiesced in the continuances to enable his attorneys to be prepared for trial." To the contrary, he repeatedly cited his medical procedures and a general desire not to proceed to trial as the reasons for his agreement to continuances.

14

Appellant also argues that the court abused its discretion by allowing his counsel "to take a position against a potential *Litmon* motion in the wake of *Vasquez*" rather than accepting for filing "what clearly could have been a successful *Litmon* motion based solely on the similarities of his case with the *Vasquez* and *Litmon* cases." He contends counsel was conflicted between loyalty to him and loyalty to his office. This claim fails. Appellant points only to *Vasquez*'s "fairly damning account of the SVP department during the period that appellant's case was waiting for trial," rather than to any evidence showing similar problems in his case. Appellant also chose to waive his presence at trial despite the purported conflict with his attorney, which the trial court found precluded appellant from making a second *Marsden* motion. His counsel's decision not to file the appellant's proffered motions in appellant's absence was a tactical one that did not evince a complete breakdown in the attorney-client relationship. (See *People v. Clark* (2011) 52 Cal.4th 856, 912.)

## II. Missing Record

Appellant contends that "the superior court's failure to retain the first half of appellant's file [documenting the proceedings from September 19, 2008 through March 2, 2011] has denied appellant his Federal Due Process right to a complete and accurate record on appeal and therefore reversal is required." We disagree.

"A criminal defendant is indeed entitled to a record on appeal that is adequate to permit meaningful review. That is true under California law. (*People v. Howard* (1992) 1 Cal.4th 1132, 1165.) It is true as well under the United States Constitution-under the Fourteenth Amendment generally, and under the Eighth Amendment specifically when a sentence of death is involved. (*People v. Howard, supra*, 1 Cal.4th at p. 1166.)" (*People v. Alvarez* (1996) 14 Cal.4th 155, 196, fn. 8.)

However, "[p]roceedings to commit an individual as a sexually violent predator in order to protect the public are civil in nature." (*People v. Allen* (2008) 44 Cal.4th 843, 860.) Even if we were to assume without deciding that appellant shares this constitutional and statutory entitlement to an adequate record, "[t]he record on appeal is inadequate . . . only if the complained-of deficiency is prejudicial to the defendant's ability to prosecute his appeal." (*People v. Alvarez*, *supra*, 14 Cal.4th at p. 196, fn. 8.) "It is the defendant's burden to show prejudice of this sort." (*Ibid.*)

Appellant has not carried that burden here. He does not show that the absence of documents dating from September 2008 through March 2, 2011 is prejudicial to his ability to assert his *Marsden*, *Litmon*, and *Vasquez* claims, or any other. Instead, he "acknowledges that the record that does exist discloses no objections or other irregularities in the missing part of the record and that courts have routinely rejected arguments such as the one raised herein on the grounds that appellant has not shown the materiality of the omissions or attendant prejudice."

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


MANELLA, P. J.


WILLHITE, J.


16