Filed 5/23/22  P. v. Lopez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANDREW RICK LOPEZ,<br><br>    Defendant and Appellant. | F080312<br><br>(Super. Ct. No. 1050255)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Scott T. Steffen, Judge.

Jenny M. Brandt, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ward A. Campbell, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*]Before Levy, Acting P. J., Peña, J. and Meehan, J.

# INTRODUCTION

In 1991, a jury convicted defendant Andrew Rick Lopez of second degree murder and the jury found true an enhancement allegation that defendant used a dangerous and deadly weapon in the commission of the crime (a knife) (Pen. Code, § 12022, subd. (b)). (Undesignated statutory references are to the Penal Code.) Defendant also admitted he served a prior prison term for purpose of a section 667.5 enhancement.

After the passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), defendant filed a petition for resentencing pursuant to section 1170.95. The superior court appointed the public defender to represent defendant in the petition proceedings. A few months later, defendant filed a "Notice of Lack of Meaningful Contact From Appointed Counsel" in pro se, requesting a hearing on whether he was entitled to a new attorney. He asserted defense counsel failed to make any meaningful or substantial contact with him since being appointed. The court did not rule on defendant's request and denied his petition, finding defendant's conviction was solely based on a theory of malice because defendant was the actual killer and the jury was not instructed on the felony-murder rule or the natural and probable consequences doctrine.[1]

On appeal, defendant contends the trial court erred in failing to hold a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) or to rule on his request for substitute counsel before denying his petition in violation of defendant's rights to due process and effective assistance of counsel. He also argues the court erred in denying his petition.

We affirm the court's order denying defendant's petition.

---

[1]Defendant's previous counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 in our court. Defendant filed a supplemental letter brief and a request to augment the record in response. Per defense counsel's request, she was relieved. Our court then appointed defendant new counsel, who moved to strike the *Wende* brief and to instead file a brief on the merits. Because defendant's request to augment the record is not relevant nor necessary to our disposition on appeal, we deny it as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 3, 2019, defendant submitted a petition for resentencing pursuant to section 1170.95, using a preprinted form. He checked boxes stating a charging document had been filed against him allowing the prosecution to proceed under a felony-murder theory or the natural and probable consequences doctrine; at trial, he was convicted of first or second degree murder under a felony-murder theory or the natural and probable consequences doctrine; and he could not now be convicted of murder in light of changes made to sections 188 and 189, effective January 1, 2019 (pursuant to Senate Bill 1437). He checked another box stating he was convicted of second degree murder under the natural and probable consequences doctrine or under the second degree felony murder doctrine and could not now be convicted of murder because of changes to section 188, effective January 1, 2019. He indicated there was a prior determination by a court under section 1118.1 and attached a minute order dated December 11, 1991, reflecting the court granted defendant's motion for acquittal of first degree murder. He also checked a box stating, "I request that this court appoint counsel for me during this re-sentencing process." The court subsequently appointed the public defender to represent defendant.

The People responded to the petition, arguing defendant failed to establish a prima facie case he is entitled to relief because the facts of the case established he was the actual killer. They asserted the court's dismissal of the first degree murder charge during trial did not negate the jury's finding of guilt as to the second degree murder charge. They noted the jury found true an allegation defendant personally used a knife in the commission of the second degree murder. They asserted, because defendant was found by a jury to be the actual killer, he is not entitled to resentencing under section 1170.95 and his petition must be summarily denied. They cited the unpublished appellate opinion from defendant's direct appeal, which stated defendant stabbed and killed the victim. They asserted defendant was barred by res judicata and collateral estoppel "from relitigating the issue of the legal theory for his second-degree murder conviction." They

3.

also argued Senate Bill 1437 is unconstitutional.  The People attached the unpublished appellate opinion and portions of the trial transcript to their response to defendant's petition.  The excerpts from the trial transcript reflected, in part, a forensic pathologist's testimony the victim's cause of death was stab wounds to the chest.

Defendant filed a reply on August 14, 2019, arguing Senate Bill 1437 gave him "a clear avenue to relitigate his murder conviction."  He urged the court not to weigh evidence before holding an evidentiary hearing, and he argued his petition made a prima facie showing he was entitled to relief.

Defendant filed a notice of lack of meaningful contact from his appointed counsel on August 19, 2019, which he stated was his "second notice that the appointed Stanislaus County Public Defender's Office has failed to make any meaningful or substantial contact with [him] since being appointed."  He requested a *Marsden* hearing and appointment of conflict counsel.  He stated, in response to his motion for new trial on January 13, 1992, the court had appointed him another attorney since his motion included claims of ineffective assistance by the public defender's office.

He further claimed he filed a motion with the court on June 11, 2019, notifying it of a lack of contact by his appointed counsel.[2]  He stated, on June 24, 2019, the public defender's office notified him he had filed a section 1170.95 petition; it was appointed to represent him; the district attorney's office opposed the petition: and it was "'important that [he] get in contact with [his counsel] so [they] can communicate.'"  According to defendant, the letter stated it was best to reach his counsel by telephone and provided a phone number where defendant could reach the appointed public defender.  It notified defendant he could write, but that would delay the process.  Defendant then represented to the court he did not have phone privileges in prison and, prior to receiving the form notice from the public defender's office, he had written a minimum of five letters to the

---

[2]He asserted the "filed" date stated was based upon the "Prison Mail Box Rule."

4.

office with information. Upon receipt of the letter, he wrote another letter to the public defender and explained the public defender needed to arrange a legal call through the prison litigation coordinator. He stated, "[I]n a July 18, 2019 letter, … the prison Litigation Coordinator refused to afford [them] a confidential legal call and, again, suggest[ed] that [defendant] call the Public Defender's Office. (Among other claims that [he could not] put in the open record, but which shocked [defendant])."

On October 30, 2019, the court issued an order denying defendant's section 1170.95 petition for resentencing, stating in relevant part:

> "According to the record in this case, [defendant]'s conviction was based on evidence that John Amaral was engaged in a fist fight with the victim, and [defendant] came to Amaral's aid and stabbed and killed the victim. The jury was not instructed on the felony-murder rule, or the natural and probable consequence[s] doctrine. Accordingly, [defendant] is not eligible for relief under … section 1170.95.

> "[Defendant]'s counsel filed an opposition to the People's motion to dismiss, arguing that [defendant] has made a prima facie showing that he is entitled to relief and that this court should therefore issue an order to show cause. However, simply filing a paper stating grounds upon which relief could be based, even under oath, is not sufficient where the petitioner is *not eligible* for relief. The statute could not be more clear. A person convicted of first or second degree murder may file a petition *if, and only if*, the prosecutor was able to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. That is simply not the case here. [Defendant]'s conviction was based solely on a theory of malice."

## DISCUSSION

Defendant challenges the denial of his petition, asserting the court erred in failing to hold a *Marsden* hearing before denying his petition for resentencing, improperly relying on hearsay, and concluding he was categorically ineligible for relief. We conclude the record of conviction establishes defendant is ineligible for resentencing; thus, any alleged procedural errors below were harmless.

5.

**1.     Senate Bill 1437 and Senate Bill 775 (2021–2022 Reg. Sess.)**

On September 30, 2018, the Governor signed Senate Bill 1437, which became effective on January 1, 2019.  Senate Bill 1437 "amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f).)  It amends section 188, which defines malice, and section 189, which defines the degrees of murder to address felony-murder liability.  (Stats. 2018, ch. 1015, §§ 2–3.)

Accordingly, section 188 now provides that, "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  *Malice shall not be imputed to a person based solely on his or her participation in a crime*."  (§ 188, subd. (a)(3), italics added.)  The change reflects the Legislature's intent that "[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea."  (Stats. 2018, ch. 1015, § 1, subd. (g).)

Additionally, section 189 previously stated, "All murder … which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree."  Senate Bill 1437 amended section 189, in part, by adding subdivision (e), which provides:

> "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:  [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and

6.

acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

The legislation also added section 1170.95, providing a procedure by which defendants whose cases are final can seek retroactive relief if the changes in the law affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.) Initially, section 1170.95 permitted those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts …." (Stats. 2018, ch. 1015, § 4, subd. (a).)

In Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), effective January 1, 2022, the Legislature amended the language of section 1170.95 to expand the scope of the petitioning procedure to defendants convicted of attempted murder or manslaughter under a now prohibited theory. The legislation also clarified some of the procedural requirements in the statute.

Under the amended version of section 1170.95, "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition" to have their conviction vacated and to be resentenced when all of the following conditions apply:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

> "(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

7.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

Pursuant to amended section 1170.95, upon receiving a petition, if the petitioner has requested counsel, the court must appoint counsel to represent the petitioner. (§ 1170.95, subd. (b)(3).) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Id.*, subd. (c).) If the petitioner has made such a showing that the petitioner is entitled to relief, the court "shall issue an order to show cause." (*Ibid.*) "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (*Ibid.*)

Within 60 days after the order to show cause has issued, the trial court must then hold a hearing "to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) At the hearing, the burden of proof is on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under the amended laws. (§ 1170.95, subd. (d)(3).)

The admission of evidence at the evidentiary hearing "shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." (§ 1170.95, subd. (d)(3).) The prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens. (*Ibid.*) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

8.

Denial of the statutory right to counsel in a section 1170.95 proceeding implicates state law only and is evaluated for harmless error under *People v. Watson* (1956) 46 Cal.2d 818, 836. (See *People v. Lewis* (2021) 11 Cal.5th 952, 973–974 (*Lewis*).)

**2. Analysis**

Defendant argues the court erred in dismissing his petition without first holding a hearing or ruling on his motion to substitute counsel. He argues the right to counsel during section 1170.95 resentencing proceedings stems from the United States and California Constitutions. He further asserts the Constitutions guarantee him the right to a hearing on whether counsel rendered ineffective assistance; but, here, the court did not even rule on his motion. He contends he is entitled to remand for the court to a hold a *Marsden* hearing in the first instance and for the court to exercise its discretion on whether he is entitled to new counsel, even absent a showing of prejudice. Notably, he concedes "the court correctly found that the jury was not instructed on natural and probable consequences or felony murder theories of liability," but he asserts the record "did not *conclusively establish* [he] was the actual killer so as to render him ineligible for relief as a matter of law." He also asserts the trial court's review of the jury instructions violated due process because the "jury instructions were not attached to any of the briefs before the court" and "[t]he court did not take judicial notice of them." In response, the People assert any alleged *Marsden* error was harmless because defendant was ineligible for resentencing as a matter of law. They argue defendant was neither prosecuted nor convicted under the felony murder or natural and probable consequences doctrine. Rather, "the jury found that [defendant] personally committed second degree murder with malice." They argue because the California Supreme Court has held any prejudice stemming from the erroneous failure to appoint counsel is analyzed by the reasonable probability standard, "[i]t logically follows that any error in failing to conduct a *Marsden* hearing in a section 1170.95 proceeding must also be judged under the same reasonable

9.

probability standard." On reply, defendant asserts the People are barred from arguing defendant was not prosecuted under a felony-murder theory or under a natural and probable consequences doctrine because, in their response below, they conceded defendant met the first two conditions to establish eligibility for relief. In supplemental briefing, defendant further contends Senate Bill 775 clarified it is not a prerequisite to relief that a jury was instructed on the natural and probable consequences doctrine or on felony murder. Rather, a defendant is eligible for relief if convicted of murder under any imputed malice theory. Because we conclude the record establishes defendant is ineligible for relief as a matter of law, we affirm the court's order denying the petition and conclude any error in failing to hold a *Marsden* hearing was harmless.

### A. The Court Did Not Err in Relying on the Record of Conviction and Concluding Defendant Was Categorically Ineligible for Relief

In *Lewis*, the California Supreme Court stated the trial court may rely on the record of conviction in determining whether a defendant has made a prima facie showing of entitlement to relief. (*Lewis*, *supra*, 11 Cal.5th at p. 971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].) "'[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."' [Citations.]" (*Ibid*.)

And here, based upon its review of the record, the trial court denied defendant's petition after concluding the jury was not instructed on the felony-murder rule or the natural and probable consequences doctrine, but instead convicted defendant of second degree murder based on a theory of malice. Notably, defendant concedes the jury was not instructed on felony murder or the natural and probable consequences doctrine. However, defendant asserts "nothing in section 1170.95, provides that a petitioner who

10.

has otherwise made a prima facie showing for relief is ineligible for an evidentiary hearing if the jury was not given certain instructions." We disagree.

Rather, where, as here, the instructions provide no basis from which the jury could have convicted defendant based upon a now invalid theory, the record refutes defendant's contention he is eligible for relief.[3] (See *People v. Daniel* (2020) 57 Cal.App.5th 666, 677; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055.) Put differently, here, the jury was instructed it could only convict defendant of murder if it found defendant acted with express or implied malice. Thus, the jury necessarily concluded defendant personally harbored malice in convicting him of murder because there was no basis for it to convict defendant under a now invalid theory of liability. Accordingly, the record of conviction establishes defendant is categorically ineligible for relief under section 1170.95 as a matter of law. (See *People v. Soto*, *supra*, at p. 1055 ["[T]he jurors were not provided any instruction on which they could have found [the defendant] guilty of murder under [the natural and probable consequences] doctrine. Rather, under the instructions, the jury necessarily found [the defendant] culpable for murder based on his own actions and mental state"]; *People v. Coley* (2022) 77 Cal.App.5th 539, 548 [affirming denial of § 1170.95 petition on attempted murder convictions where jurors were not instructed on natural and probable consequences doctrine].)

In supplemental briefing, defendant relies upon Senate Bill 775's amendments to section 1170.95 and *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) to argue the instructions in his case coupled with the prosecutor's argument suggest the jury could have convicted him of second degree murder based upon a theory of imputed malice, making him eligible for relief. He also argues the court considered hearsay evidence (facts in the appellate opinion, portions of the reporter's transcript from trial, and an

---

[3]Our review of the jury instructions comports with the trial court's conclusion and the parties' representations.

11.

unauthenticated transcript from a parole hearing) in denying his petition in violation of the amendments to 1170.95 pursuant to Senate Bill 775. The People respond, though Senate Bill 775's amendments to section 1170.95 apply retroactively, they do not alter or affect defendant's ineligibility for resentencing as a matter of law. They assert, unlike in *Langi*, here, the jury was not instructed on vicarious liability or aiding and abetting and "there was no instruction on any theory of objective liability that would have preempted the court's instructions requiring the jury to find that [defendant] had subjectively intended the victim's death or acted with a conscious disregard for his victim's life." We agree with the People.

In *Langi*, the defendant was one of four men who beat and robbed a group that included the murder victim. (*Langi*, *supra*, 73 Cal.App.5th at p. 975.) The murder victim died after someone in the defendant's group punched him, causing the victim to fall and hit his head. (*Ibid.*) The defendant argued in his petition, though the jury was not instructed on a natural and probable consequences theory, the instructions were ambiguous and allowed the jury to find defendant guilty of murder under a theory of imputed malice based solely on his participation in a crime. (*Id.* at pp. 975, 980.) The court concluded, though the jury was not instructed on the natural and probable consequences doctrine, the instructions (i.e., CALJIC Nos. 8.31 & 3.01) were ambiguous and permitted the jury to find the defendant guilty on a theory under which malice was imputed to the defendant based solely on his participation in the crime. The court explained:

> "The aiding-and-abetting instruction stated that a person aids and abets a crime if he or she acts '*with knowledge of the unlawful purpose of the perpetrator*, and … with the intent or purpose of committing or encouraging or facilitating the commission of the crime.' (CALJIC No. 3.01, italics added.) However, … the second degree murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death. Thus, while the perpetrator must have deliberately performed the fatal act 'with knowledge of the danger to, and

12.

with conscious disregard for, human life' (CALJIC No. 8.31), his purpose may have been only to strike or to injure, or conceivably only to embarrass, the victim. Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill. If the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent. Although the definition of second degree murder in CALJIC No. 8.31 states that the perpetrator must have acted with conscious disregard for human life, the definition of an aider and abettor in CALJIC No. 3.01 does not include the same requirement. Thus, under the instructions that were given, the jury was entitled to conclude that, to be guilty as an aider and abettor of second degree murder, [the defendant] need only have intended to encourage the perpetrator's intentional act—in this case, punching [the victim]—whether or not [the defendant] intended to aid or encourage [the victim]'s killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Langi*, *supra*, 73 Cal.App.5th at pp. 982–983.)

The *Langi* court held the instructions given were inadequate to negate the possibility malice was imputed to the defendant because the instructions did not specify that to be guilty of second degree murder as a direct aider and abettor, an accomplice must have also acted with implied malice. (*Langi*, *supra*, 73 Cal.App.5th at pp. 983–984.) Accordingly, the record did not establish the defendant was categorically ineligible for relief; rather, an evidentiary hearing was required. (*Ibid*.) The *Langi* court also concluded a statement in the appellate opinion that "'"[the defendant] then punched [the victim] directly in the face, causing [the victim] to fall to the ground, landing on his back, and striking the rear of his head on the sidewalk"'" did not conclusively establish defendant was the actual killer. (*Id*. at p. 977.) The *Langi* court held, despite this statement "that appellant threw the punch leading to the victim's death, for which the record does include evidence, the record as a whole leaves room to question that conclusion." (*Id*. at p. 980.) The *Langi* court noted the appellate opinion did not include an express finding the defendant threw the fatal punch, and the jury could have found defendant guilty as an aider and abettor even if it found that someone else threw the fatal

13.

punch.  (*Ibid*.)  Accordingly, the First Appellate District, Division Four, reversed the trial court's order denying the defendant's section 1170.95 petition.

Here, defendant concedes the jury "was not instructed with the problematic aiding and abetting CALJIC" as in *Langi*.  But, he argues, Senate Bill 775 extended section 1170.95's scope of relief to actual killers who were convicted on a theory under which malice was imputed based on that person's participation in a crime.  He asserts the implied malice instruction given in his case "coupled with the prosecutor's argument to the jury that they could imply malice from the fact that [defendant] committed the alleged stabbing … leaves open the door of whether the jury convicted [defendant] of murder under an invalid theory."  He argues "an instruction which would permit a jury to *impute* malice from a defendant[']s lesser criminal act (here, assault with a deadly weapon), could lead to a conviction of murder on an invalid theory."  He contends "[t]he act of stabbing someone, in and of itself, does not constitute implied malice as a matter of law."  We are not persuaded.

Here, the record of conviction establishes the jury was instructed, and defendant was convicted of second degree murder, on a theory of malice based upon defendant's own actions and his own mens rea—not the malice of another person *imputed* to him.  The jury was not instructed on a felony-murder theory or the natural and probable consequences doctrine.  Indeed, the jury was not instructed on aiding and abetting principles, nor did the other instructions permit the jury to otherwise conclude defendant was guilty of murder without finding, beyond a reasonable doubt, that he personally acted with malice aforethought.

Rather, the jury was instructed, "Murder of the second degree is the unlawful killing of a human being with malice aforethought when there is manifested an intention unlawfully to kill a human being but the evidence is insufficient to establish deliberation and premeditation."  It was further instructed, "'Malice' may be either express or implied," and the jury could find implied malice murder where the killing resulted from

14.

an intentional act; the natural consequences of the act are dangerous to human life; and the act was performed with knowledge of the danger to, and with conscious disregard for, human life.  And, as defendant acknowledges, implied malice is still a valid theory of murder despite Senate Bill 1437's amendments to sections 188 and 189.  (See *People v. Gentile* (2020) 10 Cal.5th 830, 850 ["notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life," meaning an aider and abettor can still be convicted of second degree murder under a theory of "implied malice"]; accord, *People v. Powell* (2021) 63 Cal.App.5th 689, 713 [interpreting *Gentile* to "suggest[] an aider and abettor can be liable for implied malice murder as a theory independent of the natural and probable consequences doctrine"].)

Thus, to the extent the jury convicted defendant of second degree murder based on the act of stabbing the victim, it necessarily found defendant himself harbored malice. His liability was not derived from another person's mens rea but based solely on his own. (Cf. *People v. Chiu* (2014) 59 Cal.4th 155, 164 ["'By its very nature, aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense was not intended at all.  It imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense'"].)  Accordingly, the record of conviction establishes defendant is categorically ineligible for relief.[4]  (See *People v. Cortes* (2022) 75 Cal.App.5th 198, 205

---

[4]In supplemental briefing, defendant argues the court considered hearsay evidence (facts in the appellate opinion, portions of the reporter's transcript from trial, and an unauthenticated transcript from a parole hearing) in denying his petition in violation of the amendments to section 1170.95 pursuant to Senate Bill 775.  Because defendant is ineligible for relief as a matter of law, we conclude even if the court erred by considering evidence outside of the record

15.

[court did not err in concluding defendant was ineligible for resentencing under § 1170.95, subds. (a) & (b) where "jury was not instructed on any theory of liability for murder or attempted murder that required that malice be imputed to him"]; *People v. Daniel*, *supra*, 57 Cal.App.5th at pp. 677–678 [defendant was categorically ineligible for relief where jury instructions established he was directly, not vicariously, liable for murder]; see generally *People v. Roldan* (2020) 56 Cal.App.5th 997, 1002 ["A primary purpose of Senate Bill 1437 was to align a person's culpability for murder with his or her mens rea"].) Thus, the trial court did not err in denying his petition without issuing an order to show cause and holding an evidentiary hearing. (See *Lewis*, *supra*, 11 Cal.5th at p. 971 ["'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner"'"].)

### B. Because Defendant Is Categorically Ineligible for Relief, Any Alleged Error in Failing to Hold a *Marsden* Hearing Is Harmless

Under *Marsden*, when a defendant in some manner moves to discharge his counsel during criminal proceedings, the trial court has a duty to give the defendant an opportunity to state any grounds for dissatisfaction with the current appointed attorney. (*People v. Sanchez* (2011) 53 Cal.4th 80, 90; accord, *People v. Lucky* (1988) 45 Cal.3d 259, 281; *Marsden, supra*, 2 Cal.3d at p. 124.) If, during the *Marsden* hearing, the defendant shows his right to counsel has been "substantially impaired," substitute counsel must be appointed as attorney of record for all purposes. (*People v. Sanchez*, *supra*, at p. 90; accord, *Marsden, supra*, at p. 123.) The California Supreme Court has held "the standard expressed in *Marsden* and its progeny applies equally preconviction and postconviction." (*People v. Smith* (1993) 6 Cal.4th 684, 694.)

---

of conviction at the prima facie stage, any purported error was harmless—that is, it is not reasonably probable defendant would have obtained a more favorable result absent the alleged error.

16.

Here, we have already concluded the record of conviction establishes defendant is ineligible for relief from his conviction under section 1170.95 as a matter of law. Thus, even if we were to assume, arguendo, the court erred in failing to hold a *Marsden* hearing based upon defendant's letter to the court, we cannot conclude defendant was prejudiced.

Notably, in *Lewis*, the California Supreme Court stated, "There is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction." (*Lewis*, *supra*, 11 Cal.5th at p. 972.) The court clarified, "[A] petitioner is not constitutionally entitled to counsel at the outset of the subdivision (c) stage of the section 1170.95 petitioning process" because "[a]t that point, the petitioner has not yet 'stated facts sufficient to satisfy the court that a hearing is required,' but merely endeavors to do so." (*Id.* at p. 973.) The *Lewis* court explained, "[T]he Legislature, weighing the costs in favor of broader access to counsel …, created a *purely statutory right to counsel* that attaches before the issuance of an order to show cause." (*Ibid.*, italics added) The *Lewis* court held the failure to appoint counsel at the prima facie stage of the section 1170.95 petitioning process is "state law error only" subject to the *Watson* harmless error test. (*Lewis*, at p. 973.) Thus, the complete lack of counsel at the prima facie stage can be rendered harmless if it is not reasonably probable the defendant would have obtained a more favorable outcome if he or she had been represented by counsel.

Defendant relies on *Conservatorship of David L.* (2008) 164 Cal.App.4th 701, 710 and *People v. Hill* (2013) 219 Cal.App.4th 646, 652–653 to argue the failure to hold a *Marsden* hearing violated his constitutional due process rights. In *David L.*, the Third Appellate District declined to consider "whether a proposed conservatee has a constitutional right to effective assistance of counsel." (*Id.* at p. 710.) The *David L.* court held, however, "[e]ven if a proposed conservatee has no constitutional right to effective assistance of counsel, once such a right has been conferred, a proposed conservatee has an interest in it which is protected by the due process clause of the federal Constitution." (*Ibid.*) In considering the procedures required to protect a

17.

conservatee's interest, the court emphasized the substantial private liberty interest at stake in a conservatorship proceeding. (*Id.* at p. 711.) The court further noted it saw "no meaningful distinction between criminal and [conservatorship] proceedings insofar as the procedures required to guard against the erroneous deprivation of the right to effective assistance of counsel." (*Ibid.*) The court further noted permitting a proposed conservatee the chance to seek replacement counsel furthers the purpose of the conservatorship statutes, and the failure to provide such an opportunity "necessarily 'disable[s] him from presenting his side of the story before a responsible government official.'" (*Id.* at p. 712.) Accordingly, the court held the proposed conservatee's due process rights were violated by the court's failure to permit him to be personally heard during a *Marsden* hearing, but the appeal was dismissed as moot because the conservatorship had terminated. (*Id.* at pp. 712–713; see *People v. Hill*, *supra*, 219 Cal.App.4th at pp. 652–653 [concluding a defendant in a sexually violent predator proceeding has a due process right to *Marsden* hearing for same reasons articulated in *David L.*].)

Irrespective, here, because defendant was categorically ineligible for relief as a matter of law, we conclude any error by the trial court in failing to hold a *Marsden* hearing was not prejudicial under any standard of review. (See *People v. Chavez* (1980) 26 Cal.3d 334, 349 [court erred in denying defendant's request for continued appointment of counsel without affording defendant an opportunity to explain but error was harmless beyond a reasonable doubt, noting *Marsden* did not enunciate a per se reversible error test]; *Marsden*, *supra*, 2 Cal.3d at p. 126 [reversing defendant's conviction where court denied motion to substitute counsel without hearing reasons for request and the error was not harmless beyond a reasonable doubt]; accord, *People v. Hill*, *supra*, 219 Cal.App.4th at pp. 652–653 [concluding "although the right to effective assistance of counsel in [sexually violent predator] proceedings is statutory, that right is protected by the due process clause" and "reversal is required unless we can find the denial of defendant's right to bring a *Marsden* motion harmless beyond a reasonable doubt"]; accord, *Chapman*

*v. California* (1967) 386 U.S. 18, 24 [before a federal constitutional error can be held harmless, the reviewing court must be able to declare a belief the error was harmless beyond a reasonable doubt].) Any alleged error by the trial court in failing to hold a *Marsden* hearing was harmless beyond a reasonable doubt because defendant was ineligible for relief as a matter of law. (See *People v. Winn* (2020) 44 Cal.App.5th 859, 871 [trial court's erroneous denial of *Marsden* motion without conducting a further inquiry held "harmless beyond a reasonable doubt" because evidence of defendant's guilt was "overwhelming"].)

Accordingly, we reject defendant's contentions.

## DISPOSITION

The court's order denying the section 1170.95 petition is affirmed.