# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

ISHMAEL MICHAEL CARTER,
Defendant and Appellant.

S278262

Third Appellate District
C094949

Yolo County Superior Court
CRF19987081

---

May 20, 2024

Justice Liu authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Kruger, Groban, Jenkins, and Evans concurred.

---

PEOPLE v. CARTER

S278262

Opinion of the Court by Liu, J.

In 2007, defendant Ishmael Michael Carter was committed to Coalinga State Hospital pending trial on a petition to commit him as a sexually violent predator (SVP) under Welfare and Institutions Code section 6600 et seq., the Sexually Violent Predator Act (SVP Act). After awaiting trial for over 12 years, Carter sought to enforce his due process right to a timely trial by filing a motion to dismiss the petition. In addition, Carter filed a motion under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) to replace the Yolo County Public Defender's Office and his deputy public defender as his counsel because he believed the office would be disqualified from litigating the motion to dismiss on his behalf.

Following a hearing, the trial court denied Carter's *Marsden* motion, declined to rule on the motion to dismiss, and conducted a trial resulting in Carter's indeterminate commitment as an SVP. The Court of Appeal affirmed. Carter contends the trial court's *Marsden* inquiry was insufficient and requires full reversal of the judgment or, in the alternative, conditional reversal pending reconsideration of his *Marsden* motion and potential litigation of his motion to dismiss. The Attorney General asserts that the trial court properly denied the *Marsden* motion with respect to Carter's public defender at the time but concedes that the trial court should have investigated whether a potential conflict of interest would have prevented her from litigating the motion to dismiss. The Attorney General

1

contends that remand should be limited to investigating that potential conflict.

We hold that the trial court conducted an insufficient *Marsden* inquiry and erred in instructing Carter to file his motion to dismiss pro se. But we agree with the Attorney General that "[f]ull reversal at this stage would be premature." We conditionally reverse the judgment of the Court of Appeal and remand with directions to conditionally vacate the SVP judgment and remand to the trial court for further proceedings consistent with this opinion.

**I.**

On May 29, 2007, the Yolo County District Attorney's Office filed a petition to commit Carter as an SVP. In August 2007, the trial court found probable cause to commit Carter to the custody of the State Department of State Hospitals at Coalinga State Hospital pending his SVP trial. After Carter waived time for trial to receive treatment, his trial was repeatedly continued for over 12 years, often at the request of Carter's counsel. During that period, Carter was continually represented by the Yolo County Public Defender's Office. Chief Deputy Public Defender Allison Zuvela primarily appeared as counsel for Carter for the first two years after the petition was filed. Deputy Public Defender Brett Bandley primarily appeared as counsel for Carter for the following six years. Zuvela resumed as counsel in October 2015.

On December 13, 2019, Carter filed a pro se *Marsden* motion and a pro se motion to dismiss the petition. The *Marsden* motion requested "disqualification of the public defenders office and the Chief Deputy Public Defender, Allison Zuvela." The motion to dismiss asserted that Carter "has been at Coalinga

state Hospital for . . . 12 years, in violation of [*People v. Superior Court* (*Vasquez*) (2018) 27 Cal.App.5th 36]."

On January 15, 2020, the trial court held a hearing on the *Marsden* motion. Carter explained that he filed the motion because "I've been sitting here for 12 and a half years and there's been multiple delays that was not at my request." Carter further explained that when he was represented by Bandley, there were times "when I had to leave messages that it feels like the Public Defender's Office abandoned us because we're not hearing from nobody. And a lot of times when he was supposed — when the trials or my court hearings was delayed, I wouldn't find out until I called in and the secretary was telling me. So I wasn't being informed a lot of times when he was on the case." With respect to Zuvela, Carter acknowledged that "[a]side from having a trial," there was nothing "she should be doing that she hasn't done yet." He said, "Every time I requested something she's actually pushed to get it done if she could. If there's some kind of delay, when she had the opportunity she notified me and let me know either by letter or she's called me."

In response, Zuvela explained that "it was my understanding from Mr. Bandley that they were — he wanted Mr. Carter to do as much [of] the [sex offender treatment] program as possible . . . . One of the issues and problems with what is going on in Coalinga is they keep on [changing] the program so they can't finish the program. But in November of 2017, Mr. Carter indicated to me, he's like, 'Okay, I'm ready. I have it together and I want my trial.'" Zuvela explained that at that time Carter had to be reevaluated by medical professionals. That process took over two years and had just been completed days prior to the *Marsden* hearing. She added, "I understand

that it's frustrating for Mr. Carter, but I think we're in a good position to go to trial."

Carter clarified that he "was informed that this process was necessary in order to get the other portion of the claim taken care of." He said that Zuvela was "aware of everything that is going on and the continual delays that have been hampering the functioning of this hospital." He concluded, "I give her credit when I did give her information she needed I — she went after it. It's getting the hospital to conform to what the law says which is the problem." Zuvela added, "I think Coalinga State Hospital is extremely frustrating and . . . they keep changing the [sex offender treatment program]. It's my opinion it's so no one can ever graduate, but that's my opinion."

The court denied Carter's *Marsden* motion, explaining, "From what Ms. Zuvela has told us today, I'm satisfied that she's been diligent trying to push the case forward. She hasn't necessarily delayed the process. She's promptly communicated with you and described what happened. From my vantage point she has done her job as your lawyer. It doesn't mean in a perfect world this couldn't have happened sooner, but many of the reasons of why it's so slow is not because of what she did or didn't do, it's because of what other people did or didn't do."

The court then asked Zuvela if she had discussed Carter's motion to dismiss with him, and she confirmed she had. She explained, "he's saying he's frustrated he hasn't had his trial, and so I would have to say that I am not living up to my ethical duties to pursue this for trial, and — in order to have that — have that be granted. [¶] So in essence, the first step was a Marsden hearing. I don't think I've breached my ethical duties and I think I've been trying to fight for speedy trial." Zuvela

then described *Vasquez* as "the case where he said he wanted a speedy trial and he didn't get the speedy trial and case is dismissed and Mr. Vasquez was released from Coalinga State Hospital on those grounds because his lawyer didn't push for a trial in a timely manner and his lawyer did not meet their ethical duties." Zuvela explained, "if the Court did not grant the Marsden motion, and that I have done what I need to do, I don't think I can ethically pursue [the motion to dismiss]."

The trial court said to Carter, "Based on what Ms. Zuvela has said, you could still pursue this motion, but I don't think she can represent you and advocate for it. So you would be representing yourself and I would give the DA an opportunity to respond. Do you wish to pursue this motion representing yourself?" Carter replied, "I can't represent myself to that extent . . . ." He then described *Vasquez* as the case in which "he was sitting here for 17 years and never given the trial he requested, and they didn't just put it on his attorney, but they put it also on the DA's office for the delay . . . ." The court said to Carter, "You can pursue that if you wish. One thing the Court would need to see is a declaration — a statement by you under oath saying these are the facts and the dates and the events that support this request. [¶] In the text of the motion you've made reference to things but I can't necessarily say that I can tell from that there are facts that would justify the result that you're asking for." The court continued, "If you want to pursue [the motion to dismiss]," "you may have to do it on your own because it sounds like your attorney's position is since she is still your attorney and she would have to say she didn't do her job right and she doesn't believe that's true, she can't argue on behalf of you on this motion because at least it in part requires her to say she didn't do her job right."

The court reiterated, "If you want to pursue this, I would ask that you submit at least a declaration to add to your motion. [¶] Until you do that, I won't be asking the district attorney to file a response because there isn't enough here right now to grant your motion, and I don't know if there will be or not, but we need a declaration for the motion to be presentable." Carter said, "It's just I have to have help in doing that stuff because I'm not really versed in the law." The court responded, "I'll leave that issue in your hands, and I won't receive anything more from you. [¶] We'll never talk about this motion again and if you want to pursue it, you need to file a declaration and you'll send that to your attorney or to the Court and then we'll bring it up again."

Carter did not make further efforts to file the motion to dismiss. Around May 2021, Supervising Deputy Public Defender Monica Brushia took over as counsel for Carter. On September 13, 2021, he waived his right to a jury trial, and a bench trial began. Following trial, the court held that Carter was an SVP and ordered him committed for an indeterminate term to Coalinga State Hospital.

The Court of Appeal affirmed the denial of Carter's *Marsden* motion, explaining that "the trial court correctly perceived that the delay was not attributable to Zuvela but others, including the district attorney's office." (*People v. Carter* (2022) 86 Cal.App.5th 739, 750 (*Carter*).) "[T]o the extent defendant wanted a public defender who would push harder for trial," the court explained that Carter "got what he wanted in replacement of the prior attorney with Zuvela." (*Ibid*.) The court concluded that it was a "tactical decision" to have Carter "complete sex offender treatment at Coalinga State Hospital before requesting trial" and that Carter "had previously assented to" that decision. (*Id*. at p. 752.) The court then

characterized Carter's motion to dismiss as "functionally a *Marsden* motion or a quasi-*Marsden* motion, because it created a conflict between the public defender, who did not believe she and the public defender's office had failed to diligently pursue a timely trial on his behalf, and defendant, who maintained he had been denied a speedy trial while represented by the public defender's office." (*Id.* at p. 750.)

Justice Robie agreed that "the trial court did not err in denying [Carter's] *Marsden* motion" but disagreed with "the majority's conclusion that defendant's requested motion to dismiss for violation of his right to a timely trial was functionally the equivalent of a *Marsden* motion or a quasi-*Marsden* motion." (*Carter, supra,* 86 Cal.App.5th at p. 760 (conc. & dis. opn. of Robie, J.).) Justice Robie further concluded that the trial court erred under *Wood v. Georgia* (1981) 450 U.S. 261, which requires the court " 'to inquire into the possibility of a conflict of interest' " and " 'adequately act in response to what its inquiry discovers.' " (*Carter*, at p. 767 (conc. & dis. opn. of Robie, J.).) Justice Robie explained that by focusing only on whether Zuvela had a conflict of interest with respect to herself, the trial court did not investigate any conflict of interest she may have had with respect to "the district attorney's office, Coalinga[,] . . . defense counsel who represented [Carter] prior to Zuvela," or "the trial court." (*Id.* at pp. 768–769 (conc. & dis. opn. of Robie, J.).)

We granted review to consider whether the trial court deprived Carter of effective assistance of counsel by failing to appoint substitute counsel to evaluate and potentially argue his motion to dismiss after appointed counsel refused to consider the motion based on an asserted conflict in arguing her own ineffectiveness.

## II.

As noted, the issue before us arises from two motions that Carter filed pro se in the trial court: a *Marsden* motion and a motion to dismiss. The two motions are interrelated in the circumstances here, though they are governed by different legal frameworks.

## A.

Carter's *Marsden* motion was based on his statutory right to effective assistance of counsel. (See Welf. & Inst. Code, § 6603, subd. (a); *People v. Hill* (2013) 219 Cal.App.4th 646, 652.) This right includes the right to "conflict-free representation." (*People v. Doolin* (2009) 45 Cal.4th 390, 419.) Individuals subject to SVP petitions have a due process right to a *Marsden* hearing. (*Hill*, at p. 652.) "[S]ubstitute counsel should be appointed when . . . necessary under the *Marsden* standard, that is whenever, in the exercise of its discretion, the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel . . . ." (*People v. Smith* (1993) 6 Cal.4th 684, 696 (*Smith*).) "Essentially, a claim of conflict of interest constitutes a form of ineffective assistance of counsel." (*People v. Perez* (2018) 4 Cal.5th 421, 435.)

Carter's motion to dismiss was based on an asserted violation of due process. As we recently explained, "individuals facing commitment under the SVP Act have a due process right to a timely trial." (*Camacho v. Superior Court* (2023) 15 Cal.5th 354, 379 (*Camacho*).) "SVP trials are unlike criminal trials in that they are not aimed primarily at establishing an individual's liability for past events, but instead at establishing the individual's present need for mental health treatment." (*Id.* at

p. 377.) "Once a judge has found probable cause to believe an individual is an SVP, that individual is held in a state hospital and begins to receive mental health treatment — even before trial is ever held. For this reason, both sides may have a common interest in delaying trial. From the individual's perspective, allowing more time for treatment may ultimately improve the chance of success at trial, insofar as treatment may help address a mental disorder that a jury might otherwise find poses a risk to the public." (*Ibid.*)

To determine whether an alleged SVP's due process right to a timely trial has been violated, we consider the factors set forth in *Barker v. Wingo* (1972) 407 U.S. 514, 530–531: "the length of the pretrial delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant caused by the delay." (*Camacho*, *supra*, 15 Cal.5th at p. 380, citing *Barker*, at p. 530.) "[T]he permissibility of pretrial delay depends to a great extent on who bears responsibility for it and why." (*Camacho*, at p. 384.)

"In general, delays sought by the defendant's counsel weigh against the defendant's claim of a speedy trial violation. ([*Vermont v. Brillon* (2009) 556 U.S. 81, 90–91].) This rule flows from the ordinary principle that an ' "attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation," ' such that the client must assume the consequences of the attorney's delay. [Citation.] [¶] Applying this principle in *Brillon* . . . , the United States Supreme Court reversed a state court's decision that pretrial delay should be charged against the state when the blame for the delay lay with court-appointed counsel for an indigent criminal defendant. [Citation.] The high court explained that 'assigned counsel generally are not state actors for purposes of a speedy-trial

claim . . . . [¶] . . . Their "inability or unwillingness . . . to move the case forward," [citation], may not be attributed to the State simply because they are assigned counsel.' [Citation.] The court noted that the analysis might be different if, as Brillon had argued, the delay was shown to result from 'a systemic "breakdown in the public defender system." ' " (*Camacho*, *supra*, 15 Cal.5th at p. 385.)

As we explained in *Camacho*, the Courts of Appeal in recent years have applied these principles in the SVP context. In *Vasquez*, "the Court of Appeal reviewed the record of the 17-year delay in that case and affirmed the superior court's finding that delays sought by defense counsel could not be attributed to Vasquez himself, but instead resulted from an institutional breakdown related to budget cuts and understaffing in the public defender's office that handled his case. [Citation.] Concluding the delay violated Vasquez's due process right to a timely SVP trial, the court dismissed the petition for commitment.

"Two years later, the appellate court in *People v. DeCasas* [(2020)] 54 Cal.App.5th 785 (*DeCasas*) confronted a 13-year delay caused by 'the same reduction of the SVP unit staff' at the same public defender's office as in *Vasquez*. [Citation.] Following the logic of *Vasquez*, the court found a due process violation and dismissed the petition for commitment. [Citation.]

"Finally, the court in [*In re Butler* (2020)] 55 Cal.App.5th 614 dismissed a petition for commitment after finding a due process violation based on pretrial delay. Though there were 'several factors . . . suggesting that the public defender's mismanagement of this case went beyond any particular attorney's performance,' the court found that even if those

circumstances did not constitute systemic breakdown in the public defender's office, it would be 'fundamentally unfair to hold Butler personally and solely accountable for delays caused by his counsel' where the record showed that counsel refused to convey Butler's explicit demands for trial, failed to demand a probable cause hearing or consult with a defense expert, and did not ever 'come close to being ready for trial.' " (*Camacho, supra,* 15 Cal.5th at p. 378.)

### B.

With these principles in mind, we evaluate the trial court's denial of Carter's *Marsden* motion and its conclusion that Zuvela could not litigate the motion to dismiss on Carter's behalf.

Having both motions before it, the trial court should have considered Carter's *Marsden* motion in the context of his proposed motion to dismiss. In other words, the court should not have simply determined whether Zuvela had "done her job" up to that point but should have asked whether a conflict of interest would have prevented Zuvela from effectively investigating and potentially litigating Carter's motion to dismiss. (*Smith, supra,* 6 Cal.4th at p. 695 [a *Marsden* ruling "is forward-looking in the sense that counsel would be substituted in order to provide effective assistance in the future" (italics omitted)].) Carter called attention to the relationship between his two motions by saying he "was informed that [the *Marsden*] process was necessary in order to get the other portion of the claim taken care of." Focusing on this relationship was essential to adequately evaluating the *Marsden* motion.

Regardless of whether Zuvela had "done her job," other factors may have been relevant to Carter's motion to dismiss. In

*Vasquez*, the record showed that despite defense counsel's best efforts, they were unable to adequately prepare for trial due to "dramatic budget cuts" in the public defender's office. (*People v. Superior Court* (*Vasquez*), *supra*, 27 Cal.App.5th at p. 73.) At a hearing on Vasquez's motion to dismiss, one of his former public defenders testified that she was " 'doing what [she] needed to do' " and that " 'Mr. Vasquez was a priority,' " but staffing shortages slowed her progress on his case and she ultimately was unable to take it to trial because she was transferred out of the SVP unit. (*Id.* at p. 53.) This testimony simultaneously demonstrated that the attorney had fulfilled her duty to move the case forward and supported the court's finding that an "institutional breakdown" in the public defender system caused the delay in holding Vasquez's trial. (*Id.* at p. 54.) The court in *DeCasas* similarly found undue delay based in part on defense counsel's description of "the deleterious effects of the staffing cuts on their ability to effectively represent their clients." (*People v. DeCasas*, *supra*, 54 Cal.App.5th at p. 810.) Both cases concluded that the trial courts did not adequately guard against the delays. (*Id.* at p. 810; *Vasquez*, at p. 81.) And in both cases, the Courts of Appeal held that the pretrial delay warranted dismissal of the SVP petitions. (*DeCasas*, at p. 813; *Vasquez*, at p. 83.)

By claiming that while Bandley was his attorney, there were "multiple delays . . . not at [his] request" and times when it "fe[lt] like the Public Defender's Office abandoned us," Carter attempted to show an institutional breakdown like those identified in *Vasquez* and *DeCasas*. Carter also identified delays by the hospital as "the problem." And Zuvela confirmed the hospital had repeatedly changed the sex offender treatment program, prolonging Carter's treatment. In addition, Carter

asserted in his motion to dismiss that the trial court "never exercised reasonable control over all the proceedings connected with this pending litigation" and had not fulfilled its "obligation to act proactively to protect [his] right to a timely trial." He also identified "communication between [Zuvela] and the DA's office" as a reason for the delay. These claims had nothing to do with Zuvela's performance — as the trial court said, "many of the reasons of why it's so slow is not because of what she did or didn't do, it's because of what other people did or didn't do" — and the record does not reveal any reason why she could not have investigated and potentially litigated these issues on Carter's behalf. Given the trial court's lack of inquiry into whether Zuvela had any conflict that would have prevented her from litigating Carter's motion to dismiss, its denial of the *Marsden* motion rests on error of law, constituting an abuse of discretion. (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.)

The Attorney General points out that Zuvela may have been unable to litigate delays allegedly caused by Bandley due to a potential conflict of interest. But it is also possible that delays by Bandley were due to institutional deficiencies or to his strategy for Carter to complete treatment before requesting trial. Under the latter circumstances, Zuvela might not have had any reason to litigate her colleague's performance. Although the Court of Appeal characterized the delay as a "tactical decision" (*Carter, supra*, 86 Cal.App.5th at p. 752), the trial court did not inquire into these issues, and after the trial court left Carter without counsel on his motion to dismiss, it was not litigated further. (See *id.* at p. 773 (conc. & dis. opn. of Robie, J.) [a reviewing court cannot "decide the merits of the motion to dismiss based on a record that does not provide an opportunity for meaningful review *because* defendant was

denied his statutory right to counsel"].) On this record, reversal is required no matter the applicable standard of prejudice because it cannot be said whether Bandley's delay was a "tactic" or whether Carter "had previously assented to" it. (*Carter* at p. 752.)

As Justice Robie observed, the trial court compounded its error when it left Carter to pursue his motion to dismiss without the assistance of counsel. (*Carter, supra,* 86 Cal.App.5th at p. 770 (conc. & dis. opn. of Robie, J.).) "Motions and briefs of parties represented by counsel must be filed by such counsel." (*People v. Clark* (1992) 3 Cal.4th 41, 173.) A narrow exception to this rule allows the filing of "pro se motions regarding representation, including requests for new counsel." (*Ibid.*) But Carter's motion to dismiss, which was distinct from his *Marsden* motion, was not a request for new counsel. Indeed, in response to the trial court's instruction that Carter would have to proceed on his own, Carter made clear that he wanted the assistance of counsel in preparing and filing his motion to dismiss.

## C.

We therefore conclude that the trial court abused its discretion in denying Carter's *Marsden* motion without an adequate inquiry and further erred in denying Carter the assistance of counsel in determining whether to file a motion to dismiss. The Attorney General concedes that a limited remand in these circumstances is appropriate, and we agree. Whether Carter was denied his right to substitute counsel or his right to a timely trial appear distinct from the issues of whether Carter "has been convicted of a sexually violent offense against one or more victims," "has a diagnosed mental disorder that makes [him] a danger to the health and safety of others," and should be

committed as an SVP. (Welf. & Inst. Code, § 6600, subd. (a)(1).) " '[W]hen the validity of a [judgment] depends solely on an unresolved or improperly resolved factual issue which is distinct from [the judgment], such an issue can be determined at a separate post-judgment hearing and if at such hearing the issue is resolved in favor of the People, the [judgment] may stand.' " (*People v. Moore* (2006) 39 Cal.4th 168, 176–177; see *People v. Minor* (1980) 104 Cal.App.3d 194, 200.)

On remand, the trial court should conduct a *Marsden* hearing to determine whether a conflict of interest would prevent the Yolo County Public Defender's Office from litigating Carter's motion to dismiss. If so, then the *Marsden* motion should be granted, and an attorney not affiliated with that office should be appointed to evaluate Carter's motion to dismiss. (See *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1139 ["When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm."]; 59 Ops.Cal.Atty.Gen. 27, 29 (1976) ["Where two deputies represent conflicting interests in the same case, it is the same as one public defender representing both interests."]; see also *People v. Sanchez* (2011) 53 Cal.4th 80, 84 ["if a defendant requests substitute counsel and makes a showing during a *Marsden* hearing that the right to counsel has been substantially impaired, substitute counsel must be appointed as attorney of record for all purposes"].) If the *Marsden* motion is denied, the Yolo County Public Defender's Office should have the opportunity to evaluate Carter's motion to dismiss. In either case, if the motion to dismiss is filed and the trial court determines that Carter's due process rights were violated, then the court should address whether dismissal is the

appropriate remedy — a question we have not yet addressed in the SVP context.  (*Camacho, supra,* 15 Cal.5th at p. 382, fn. 5.)

If the *Marsden* motion is granted but a motion to dismiss is not filed, or if it is filed and properly denied, then the court should consider whether the *Marsden* error affected the judgment.

## CONCLUSION

We reverse the judgment of the Court of Appeal and remand with instructions to direct the trial court (1) to conditionally vacate its September 27, 2021 order finding Carter a sexually violent predator within the meaning of Welfare and Institutions Code section 6600 et seq., (2) to vacate its January 15, 2020 order denying Carter's motion pursuant to *Marsden, supra,* 2 Cal.3d 118, (3) to reconsider that motion consistent with this opinion, (4) to give counsel an opportunity to evaluate Carter's motion to dismiss, and (5) to determine whether any *Marsden* error affected the judgment.

**LIU, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Carter

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 86 Cal.App.5th 739
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S278262
**Date Filed:** May 20, 2024

---

**Court:**  Superior
**County:**  Yolo
**Judge:**  Daniel M. Wolk

---

**Counsel:**

John L. Staley, under appointment by the Supreme Court, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Clara M. Levers, Julie A. Hokans, Rachelle A. Newcomb and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John L. Staley
Attorney at Law
12463 Rancho Bernardo Road, No. 372
San Diego, CA 92128
(858) 335-2713

Clara M. Levers
Deputy Attorney General
1300 I Street
Sacramento, CA 95814
(916) 210-7773